**IMPERIAL TOBACCO LIMITED, ASSIGNEE OF IMPERIAL GROUP PLC, Appellant,**

v.

**PHILIP MORRIS, INCORPORATED, Appellee.**

No. 89–1444.

United States Court of Appeals, Federal Circuit.

March 30, 1990.

Brewster Taylor, of Larson and Taylor, Arlington, Va., argued for appellant. With him on the brief was Andrew E. Taylor.

Anthony L. Fletcher, of Hunton & Williams, New York City, argued for appellee. With him on the brief was Christopher J. Mugel, of Hunton & Williams, Richmond, Va.

Before NIES, BISSELL,* and ARCHER, Circuit Judges.

NIES, Circuit Judge.

Imperial Tobacco Limited appeals from the final decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, in Cancellation No. 16,024, granting the petition of Philip Morris, Incorporated, for cancellation of Imperial's Registration No. 1,160,-229 on a motion for summary judgment. We affirm.

I

Imperial Tobacco Limited, a United Kingdom corporation, owns Registration No. 1,160,229 issued on July 7, 1981, on the Principal Register for the trademark shown below for cigarettes:

The registration in issue was obtained on the basis of its prior United Kingdom registration in accordance with section 44(e) of

the Lanham Act,[1] 15 U.S.C. § 1126(e) (1982). No use of the mark in commerce in or with the United States was alleged.

Philip Morris filed a petition to cancel Imperial's registration on the ground that the registered mark was abandoned. *See* sections 14 and 45, 15 U.S.C. §§ 1064 and 1127 (1982). At the close of discovery, cross-motions for summary judgment were made. In support of its motion, Philip Morris relied on the undisputed fact that there had been no United States sales of cigarettes under the registered mark from the date of registration up to the date of Philip Morris' petition filed November 3, 1986. Philip Morris acknowledged Imperial made sales of approximately 50,000 *JPS* cigarettes after May 1987, apparently to support the filing of a declaration of use under section 8, 15 U.S.C. § 1058 (1982),[2] but argued that neither such use nor Imperial's activities during the period of nonuse raised a genuine issue of material fact that the mark had been previously abandoned.

Imperial maintains that in this case the period of nonuse is insufficient in itself to establish abandonment of the mark. In opposing Philip Morris' motion, Imperial submitted affidavits and evidence purporting to show that it had no intention to abandon the mark because during that period it had been trying to open the United States market. Per Imperial, its activities excuse its delay in introducing in the United States cigarettes bearing the *JPS* mark and negate an inference of intent to abandon the mark, or at least raise a genuine issue with respect to its intent to abandon the mark, thereby precluding summary judgment.

The board ruled that Philip Morris had demonstrated its entitlement to prevail on the issue of Imperial's abandonment as a matter of law. It found no genuine issue of material fact underlying that issue and concluded that more evidence, obtained by

---

* Judge Bissell, who died February 4, 1990, did not participate in this opinion.

1. All section references herein are to the Act of July 5, 1946, ch. 540, 60 Stat. 427, popularly known as the Lanham Act or The Trademark Act of 1946.

2. By the terms of the statute, a registration must be cancelled unless an affidavit or declaration of use is filed in accordance with this section during the sixth year of registration.

trial, could not reasonably be expected to change the result. Specifically, it held the undisputed facts show that, although Imperial commenced actual use in the United States in May of 1987, abandonment had occurred before that date. The board rejected Imperial's position that the *prima facie* case of abandonment arising from an extended period of nonuse of the mark was overcome or in doubt. Per the board, none of the proffered reasons for Imperial's nonuse had the effect of precluding Imperial from selling cigarettes under the *JPS* mark at any time in the United States. Imperial simply chose not to do so for various business reasons that did not excuse its nonuse. Further, the board held that the affidavits of Imperial's personnel that it did not intend to abandon its rights in the mark were insufficient to create a genuine issue of material fact. We agree.

## II

This appeal requires interpretation of the statutory provision under which a registration for a mark may be cancelled on the ground that such mark has been abandoned. Specifically, the question relates to abandonment of a mark covered by a U.S. registration which was obtained on the basis of a foreign registration, where no use has been made of the mark in the United States from the date of registration up to the time the petition was filed, a period here of at least five years. The issue is one of first impression in this court.

■ Under section 1 of the Lanham Act, as it existed prior to recent amendments, 15 U.S.C. § 1051 (1982), an applicant for

registration of a trademark in the United States was not entitled to file an application until the applicant actually used the mark in U.S. commerce in connection with particular goods or services.[3] However, an exception was provided to this general rule. Pursuant to section 44(e), a foreign applicant of a country with whom the United States maintained certain treaty rights was entitled to obtain a U.S. registration for a mark based on ownership of a registration in its home country without any use in the United States.[4] Section 44(e) gave such foreign applicant a significant advantage over other applicants in procuring a registration in this country. However, the statute gave no similar advantage in the *maintenance* of a section 44(e) registration. On the contrary, section 44(f) provided, and still provides, that a registration obtained under section 44(e) "shall be independent of the registration in the country of origin and the duration, validity, or transfer in the United States of such registration shall be governed by the provisions of this chapter." Thus, after registration, a section 44(e) registrant is entitled only to the same national treatment as any other registrant.

■ When a petition for cancellation of a registration is filed more than five years after the date of registration, the statute provides limited grounds for cancellation. *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 761, 214 USPQ 327, 332 (CCPA 1982). One basis that continues, after the five-year period, is abandonment of the mark which is the subject of the registration. As provided in section 14(c), abandonment is a basis for cancella-

3. In the Trademark Law Revision Act of 1988, Pub.L. No. 100–667, § 103(3), 102 Stat. 3935 (codified at 15 U.S.C. § 1051(b) (1988)), Congress added a new basis for the *filing of an application,* namely, a bona fide intention to use a mark in commerce in relation to specific goods or services. However, for these "intent-to-use" applications, actual use of the mark in commerce is a prerequisite to the *issuance of a registration.* The same declaration of intent-to-use must now be made in connection with section 44 applications, 15 U.S.C. § 1126(e) (1988), but such registration may issue without actual use. *See* Pegram, J., *Section 44 Revision: After the 1988 Act,* 79 Trademark Reporter 220–223 (1989).

4. Section 44(e), 15 U.S.C. § 1126(e) (1982), provides:

> **Registration on principal or supplemental register; copy of foreign registration**
> A mark duly registered in the country of origin of the foreign applicant may be registered on the principal register if eligible, otherwise on the supplemental register in this chapter provided. The application therefor shall be accompanied by a certification or a certified copy of the registration in the country of origin of the applicant.

tion "at any time." [5] Thus, a section 44(e) registration, like any other registration, may be cancelled on the ground of abandonment of the mark at any time. As stated in *P.A.B. Produits et Appareils de Beaute v. Satinine Societa in Nome Collettivo di S.A. e.M. Usellini*, 570 F.2d 328, 196 USPQ 801 (CCPA 1978):

> Having obtained a registration, the foreign registrant is subject to our national law; it is subject to the same treatment and conditions which prevail in connection with domestic registrations based on use in the United States, including the possibility of cancellation on the ground of abandonment. 570 F.2d at 330, 196 USPQ 802–03.

Under the statute, an abandoned mark is not entitled to continued registration regardless of the basis on which the registration was originally obtained. Thus, the question on summary judgment here is whether the undisputed facts establish as a matter of law that the *JPS* mark has been "abandoned" within the meaning of the statute.

### III

Under section 45, a mark shall be deemed to be abandoned *inter alia:*

> (a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

Under the above provision, *prima facie* abandonment of a mark is established by proof of its nonuse for two consecutive years.[6] The terms "use" and "nonuse" mean use and nonuse in the United States. *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1024–25, 13 USPQ2d 1307, 1309–10 (Fed. Cir.1989). To overcome that *prima facie*

case, the registrant must come forth with evidence that it "discontinued" use of a mark without an "intent not to resume" use.

At common law there was no similar presumption of abandonment of a mark simply from proof of nonuse. A challenger had to prove not only nonuse of the mark but also that the former user *intended to abandon* the mark. *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31, 21 S.Ct. 7, 11, 45 L.Ed. 60 (1900). However, with respect to rights under the Lanham Act, proof of abandonment was facilitated by the creation of the above statutory presumption.

In effect, the presumption eliminates the challenger's burden to establish the intent element of abandonment as an initial part of its case. Thus, statements from opinions under the common law of abandonment concerning the nature of the element of intent and who had the burden of proof cannot be applied indiscriminately to an abandonment case under the Lanham Act concerned with a party's entitlement to continued registration. In the instant case, Philip Morris proved that Imperial did not use the mark *JPS* for cigarettes in the United States for more than two years immediately preceding the filing of its petition for cancellation. Such proof established a *prima facie* case of abandonment of the *JPS* mark under section 45(a), including the element of intent.

As an initial matter, Imperial asserts that the finding of abandonment is inconsistent with the finding of Philip Morris' standing to bring this case. On the standing issue, Philip Morris alleged *inter alia* that the *JPS* mark was likely to be known to some potential customers in this country by reason of their having travelled,

---

5. Section 1064(c) is, "in effect, a five year time limit barring certain attacks on a *registration*. It should be noted that this section is not dependent on the filing of a declaration under § 15 which provides incontestable rights of *use* to a limited extent (15 U.S.C. § 1065)." *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 761 n. 6, 214 USPQ 327, 332 n. 6 (CCPA 1982).

6. We note that the 1988 amendments added to the definition of abandonment in section 45: "'Use' of a mark means the bona fide use of that mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." The amendment is not significant in this case.

abroad where the mark was used.[7] Imperial argues that because its mark was alleged to be known here, it could not at the same time be abandoned. While superficially appealing, the argument is without merit. The question here is a right to registration.[8] A foreign trademark may be known by reputation in this country and may even be protectable under concepts of unfair competition, but such mark is not entitled to either initial or continued *registration* where the *statutory requirements* for registration cannot be met. Also contrary to Imperial's view, the statement in *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d at 765, 214 USPQ at 335 that "[o]nly when all rights of protection are extinguished is there abandonment" provides no support for Imperial's assertion of a right to maintain its registration. *Wallpaper* rejected the view that a petition for cancellation which in essence asserted likelihood of confusion with the petitioner's mark could be brought *after five years* in the guise of a claim of abandonment as defined in section 45(b).[9] The *Wallpaper* court rejected the argument that because the same mark identified *de facto* two unrelated sources, the mark must be held abandoned as a matter of law under section 45(b). Significantly the registrant in *Wallpaper* was using its mark and had always used it. Imperial's quotation from *Wallpaper* is taken wholly out of context. It has no pertinence to the situation here where the asserted mark has never been used and the foundation for abandonment is section 45(a) not 45(b).

Imperial next argues that the board erred as a matter of law by imposing a new and unreasonable burden on a registrant to prove it possessed an intent to use the mark in the United States at some definite time. The statutory provision, per Imperial, does not require evidence of such intent. Technically, Imperial is correct that the statutory definition for abandonment of a mark does not use the words "intent to use" or "intent to begin use." The statutory language is "intent not to resume" use. Those words are appropriate for the usual situation in which a registered mark has been used at some time in this country. Where there is use, followed by a period of nonuse, the question is whether the registrant "discontinued" use with an "intent not to resume." In contrast, the subject registration, as indicated, was obtained without allegations of use of the mark in the United States and, during the pertinent time frame, the mark has never been used in the United States. The statutory language "discontinued" and "intent not to resume," as applied to the present situation, is inapt.

Imperial solves this language problem by arguing that the statutory language "intent not to resume" use of the mark should be interpreted to mean "intent to abandon" the mark. Under Imperial's interpretation, it asserts it would then have raised a genuine issue of material fact as to its intent by the submission of affidavits averring that Imperial had no intent to abandon its rights in the mark *JPS*.

Imperial is correct that in some post-Lanham Act opinions, "intent not to resume"

---

**7.** While likelihood of confusion could not be the basis for cancellation after five years, such allegations can afford standing. The standing issue was not appealed. However, standing is a jurisdictional issue and must be considered. The board held, in essence, that Philip Morris' standing was established by allegations that Imperial promotes and uses the monogram with the words JOHN PLAYER SPECIAL abroad so that the two have become synonymous and that some prospective U.S. purchasers of cigarettes, particularly travelers, would be likely to attribute JPS cigarettes to Philip Morris, if sold in the United States, because of its prior use of PLAYERS in this country. We agree that those allegations are sufficient. We do not, of course, pass on the merits of the allegations. *See*

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 65–66, 108 S.Ct. 376, 391–92, 98 L.Ed.2d 306 (1987).

**8.** We also specifically point out that the question decided here is not whether Imperial is entitled to use or re-register *JPS* for cigarettes in the United States but only whether it is entitled to the *benefits of its 1981 registration*.

**9.** Section 45(b), 15 U.S.C. § 1127(b) (1982) provides:

(b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin.

and "intent to abandon" have been used interchangeably. However, as more precisely analyzed by Judge Higginbotham in *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 102, 217 USPQ 1200, 1204 (5th Cir.1983), in the factual context of those cases, *see, e.g., United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 209 USPQ 457 (3rd Cir.1981), the substitution of one phrase for the other made no difference. On the other hand, as Judge Higginbotham explains in *Exxon Corp.:*

> There is a difference between intent not to abandon or relinquish and intent to resume use in that an owner may not wish to abandon its mark but may have no intent to resume its use.... In the context of a challenge strictly under the Lanham Act to an alleged warehousing program, as the facts of this case present, the application of the statutory language is critical.

695 F.2d at 102, 217 USPQ at 1204–05.

As in the *Exxon* case, we also conclude that an affirmative desire by the registrant not to relinquish a mark is not determinative of the intent element of abandonment under the Lanham Act. Nothing in the statute entitles a registrant who has formerly used a mark to overcome a presumption of abandonment arising from subsequent nonuse by simply averring a subjective affirmative "intent not to abandon." As indicated in the quotation from *Exxon,* the Lanham Act was not intended to provide a warehouse for unused marks. *See also AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1550, 1 USPQ2d 1161, 1177 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987).

■■■ In every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest. Under Fed.R.Civ.P. 56, made applicable to proceedings before the board by 37 C.F.R. § 2.116(a) (1988), one must, however, proffer more than conclusory testimony or affidavits. An averment of no intent to abandon is little more than a denial in a pleading, which is patently insufficient to preclude summary judgment on the ground the facts are disputed. As this court has frequently said in connection with motions for summary judgment, a conclusory statement on the ultimate issue does not create a *genuine* issue of fact. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1564, 4 USPQ2d 1793, 1797 (Fed.Cir.1987); *see also Johnston v. IVAC Corp.,* 885 F.2d 1574, 1578, 12 USPQ2d 1382, 1385 (Fed.Cir.1989). The registrant must put forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred.

■■■ Intent to resume use in abandonment cases has been equated with a showing of special circumstances which excuse a registrant's nonuse.[10] *Miller Brewing Co. v. Oland's Breweries Ltd.,* 548 F.2d 349, 352, 192 USPQ 266, 268 (CCPA 1976); *American Lava Corp. v. Multronics, Inc.,* 461 F.2d 836, 841–42, 174 USPQ 107, 111 (CCPA 1972). While not expressly stated in other cases, the analysis has been comparable. *Cerveceria Centroamericana, S.A.,* 892 F.2d at 1027, 13 USPQ2d at 1313; *Sterling Breweries, Inc. v. Schenley Indus., Inc.,* 441 F.2d 675, 680, 169 USPQ 590, 594 (CCPA 1971). Thus, whether one characterizes the "intent" element of abandonment as an intent not to resume use or an intent to abandon is not significant. If a registrant's nonuse is excusable, the registrant has overcome the presumption that its nonuse was coupled with an "intent not to resume use," or, as Imperial would have it, an "intent to abandon." If the activities are insufficient to excuse nonuse, the presumption is not overcome. *Cerveceria Centroamericana, S.A.,* 892 F.2d at 1027, 13 USPQ2d at 1313 (forming U.S. subsidiary for marketing not sufficient to overcome presumption of intent).

We see no justification to adopt a different or more liberal interpretation of the

---

10. This is the same type of showing required in sections 8 and 9 with respect to declarations of continued use for maintenance and renewal.

*See American Lava Corp. v. Multronics, Inc.,* 461 F.2d at 839, 174 USPQ at 109.

statute in connection with a mark of a section 44(e) registrant which has *never* been used in this country. Such registrant has no right to maintain a registration except in accordance with the statute, and nothing in the statute suggests that the registration of a never-used mark can be maintained indefinitely simply because the registrant does not have an affirmative intent to relinquish the mark. A section 44(e) registrant is merely granted a dispensation from actual use prior to registration, but after registration, there is no dispensation of use requirements. If the registrant fails to make use of the registered mark for two years, the presumption of abandonment may be invoked against that registrant, as against any other.

■■■■ We do not find the board's reference to an "intent to begin use" or "intent to use" to be legal error here. Indeed, these words are an appropriate adaptation of the statutory language in the situation of a never-used mark. In any event, the significant question is whether the board imposed a heavier burden on Imperial than other registrants must shoulder, which would be contrary to the requirement for national treatment. We conclude it did not. The board simply required Imperial, like any other registrant who admits to at least two years of nonuse, to put forth sufficient evidence in response to a motion for summary judgment to at least raise a genuine issue that its nonuse was excusable.

■■■■ In a thorough and complete analysis, the board reviewed Imperial's proffered evidence and found it was not sufficient to raise a viable defense of excusable nonuse. Imperial maintains that from 1981 to 1987 "steps were taken each year towards introduction in the United States of cigarettes bearing the 'JPS' design mark." However, its evidence belies that assertion. The board carefully analyzed and rejected that evidence, and we must agree that Imperial's activities from 1981 to 1986, either

separately or combined, were insufficient to raise a genuine issue of fact precluding summary judgment.

Imperial's principal argument is that during the six-year period, it was engaged in the development of a "marketing strategy." However, much of that strategy was not for the purpose of introducing cigarettes into the United States bearing the *JPS* mark. Rather, it was directed to marketing "incidental" products, such as whisky, pens, watches, sunglasses and food under the *JPS* mark. In addition, the "strategy" included, for example, seeking federal trademark registrations covering the *JPS* mark (alone and together with "JOHN PLAYER SPECIAL") on these incidental products. We agree with the board that Imperial's concern with marketing incidental products did not excuse nonuse of *JPS* for cigarettes. The board noted that when Imperial finally made sales of *JPS* cigarettes in 1987, there was no implementation of a complex marketing strategy to introduce them. As the board pointed out, Imperial simply began selling cigarettes in 1987, as it could have all along.

Imperial also maintains that it did not use the registered mark because it was concerned with potential legal problems with Philip Morris. Although the board recognized that suspension of actual use, or plans to use a mark pending resolution of litigation, may serve to justify nonuse, *see, e.g., La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1274, 181 USPQ 545, 550 (2nd Cir.1974); *New England Duplicating Co. v. Mendes,* 190 F.2d 415, 418, 90 USPQ 151, 153 (1st Cir.1951), it held that this case did not present such facts. The undisputed facts point to a conclusion entirely different from that which Imperial asserts. The record shows that Imperial's ongoing and major litigation concern was over its desire to use *JPS in combination with* JOHN PLAYER SPECIAL as used abroad,[11] and

---

**11.** Philip Morris owns rights in the mark PLAYERS in the United States. The board noted that Imperial's use of JOHN PLAYER SPECIAL was held to infringe those rights in *Philip Morris, Inc. v. Imperial Tobacco Co., Ltd.,* 282 F.Supp.

931, 937, 156 USPQ 239, 244 (E.D.Va.1967) (Imperial's use of JOHN PLAYER'S & SONS in connection with the sale of tobacco products infringes Philip Morris' trademark PLAYER'S), *aff'd,* 401 F.2d 179, 180–81, 158 USPQ 561, 562

to use the mark on packaging having a distinctive black and gold trade dress similar to that used by Philip Morris on its BENSON AND HEDGES cigarettes. Its unsuccessful efforts to license *JPS* for cigarettes were also directed to the use of *JPS* in this manner. The board inferred that litigation fears and licensing efforts were attributable to Imperial's desire to sell *JPS* cigarettes in a particular display, not because it could not use *JPS* as registered for cigarettes. We see no other reasonable inference. *Cf. Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1571, 230 USPQ 385, 389 (Fed.Cir.1986).

Imperial's other evidence of licensing efforts pertained to the use of the *JPS* mark only on goods other than cigarettes. Other evidence pertained to licensing use of the mark outside the United States. In any event, Imperial has not asserted any reason why it could not use its mark without a licensee. Indeed, when Imperial did make shipments in 1987, it was not through a licensee. We agree with the board that none of Imperial's licensing efforts justify its nonuse of the registered mark.

Imperial proffered no other evidence which might support any additional reason for its nonuse. The evidence which it did offer does not create a genuine issue which requires resolution at trial. Imperial simply has proffered no viable excuse for nonuse of the mark for over five years. The *prima facie* case of abandonment of the mark arising from that nonuse was, therefore, not overcome.

## IV

For the foregoing reasons we conclude that the Trademark Trial and Appeal Board did not err in granting Philip Morris' motion for summary judgment on its petition for cancellation of Registration No. 1,160,-229. Imperial has shown no reversible error in the standard the board applied to determine whether the mark had been abandoned within the meaning of the statute. Nor has Imperial raised a genuine issue of material fact. Accordingly, the decision of the board cancelling Registration No. 1,160,229 is affirmed.

AFFIRMED.

(4th Cir.1968), *cert. denied,* 393 U.S. 1094, 89 S.Ct. 875, 21 L.Ed.2d 784 (1969).