**Meril RIVARD, Appellant,**

v.

**Mark LINVILLE, Appellee.**

**Nos. 97–1191, 97–1192, 97–1193.**

United States Court of Appeals, Federal Circuit.

Jan. 8, 1998.

Susan Upton Douglass, Fross Zelnick, Lehrman & Zissu, P.C., of New York City, argued, for appellant.

Charles H. Nalls, Nalls, Frazier & Hathaway, of Washington, DC, argued, for appellee.

Before MAYER, Chief Judge,* LOURIE and RADER, Circuit Judges.

MAYER, Chief Judge.

Meril Rivard appeals the decision of the United States Trademark Trial and Appeal Board, Cancellation No. 19,874, which granted the petition to cancel U.S. Registration No. 1,407,173 pursuant to 15 U.S.C. § 1064(3) (1994). *Linville v. Rivard,* 41 USPQ2d 1731, 1996 WL 795315 (TTAB 1996). Because we see no error in the board's determination that Rivard abandoned the mark without an intention to commence use in the United States, we affirm.

*Background*

In January 1986, Rivard filed trademark registration application Serial No. 575,926 in the United States Patent and Trademark Office for the mark ULTRACUTS in connection with hair dressing and beauty salon services. This application alleged a right to registration under section 44(e) of the Trademark Act, 15 U.S.C. § 1126(e) (1986), based on Canadian Reg. No. TMA298,407. Rivard's application issued as U.S. Reg. No. 1,407,173 on August 26, 1986. In June 1991, Mark Linville filed a petition requesting can-

---

* Chief Judge Haldane Robert Mayer assumed the position of Chief Judge on December 25, 1997.

cellation of Rivard's registration based on his apparent abandonment of the ULTRACUTS mark. Rivard admittedly did not offer hair dressing and beauty salon services in the United States before Linville filed the petition, but has operated many hair salons successfully in Canada since 1982.

The United States Trademark Trial and Appeal Board granted summary judgment to Linville in February 1993, because he established a *prima facie* case of abandonment by proving nonuse for two years and because Rivard failed to raise a genuine factual issue about excusable nonuse. *Linville v. Rivard,* 26 USPQ2d 1508, 1512–13, 1993 WL 156480 (TTAB 1993). Rivard appealed and, although we agreed with the board that Linville established a *prima facie* case of abandonment, we vacated the decision because "[rev]iewing [the] evidence [of Rivard's activities between 1986 and 1991] in a light favorable to Rivard, and drawing all justifiable inferences in his favor, we cannot say that a reasonable fact finder, upon accepting the truth of Rivard's statements, could not find that Rivard had an intent to begin using his mark 'ULTRACUTS' in the United States for hair salon services during the period of 1986–1991." *Rivard v. Linville,* 11 F.3d 1074 (table), 31 USPQ2d 1218, 1220 (Fed.Cir. 1993).

On remand, Rivard produced evidence of his intent not to abandon the ULTRACUTS mark. This evidence includes several trips to the United States ostensibly in an effort to establish hair dressing and beauty salons. In 1984, for example, Rivard traveled to Hawaii, examined and photographed a competitor's salon, and met with a commercial realtor, who provided him with demographic information for Hawaii. In 1986, after filing his trademark application, Rivard discussed leasing space with a Minneapolis landlord who was developing a shopping mall in St. Paul. He did not open a salon in this mall, however, allegedly because a competitor negotiated a deal with the landlord first. In 1987, Rivard contacted a franchising consultant in Minneapolis and discussed issues related to franchising. These discussions convinced Rivard not to develop a franchise in the United States, but instead to concentrate on developing a franchise in Canada. In December 1987, he traveled to Tampa,

where, according to his testimony, he examined a competitor's operation. Rivard did not open a salon in Tampa after this visit. In 1988, Rivard traveled to Tampa and Las Vegas and allegedly considered opening salons there, but ultimately chose not to do so. In June 1989, he returned to Tampa and, according to his testimony, examined other competitors' locations and investigated purchasing an existing salon. This time, he decided that opening salons in Tampa would not be feasible. Rivard traveled to Grand Forks, North Dakota in 1990, and claims to have investigated salon locations in malls and the possibility of acquiring existing salons. In August 1991, he met the general manager of a mall in Grand Forks with a view toward opening a salon there. The general manager testified that the mall did not lease space to Rivard because, in light of its existing five beauty shops, "it was not felt to be in the best interests of the shopping center to add an additional one at that time."

Weighing Rivard's evidence against the evidence establishing abandonment, the board found that he did not have "an intent to commence use of the ULTRACUTS mark in connection with the rendering of hair dressing and beauty salon services in the United States during the period between issuance of the registration in August 1986 and the filing of the petition for cancellation in June 1991." 41 USPQ2d at 1739. The board also found that Rivard did not establish that his "nonuse of the mark during this period was reasonable." *Id.* It concluded, therefore, that Linville proved abandonment by a preponderance of the evidence and granted the petition for cancellation. *See id.* at 1741. Rivard appeals.

### Discussion

■ Trademark law provides for canceling a registration "[a]t any time if the registered mark ... has been abandoned," 15 U.S.C. § 1064(3) (1994), and defines abandonment as discontinued use with an intent not to resume, *see id.* § 1127. Where a registrant has never used the mark in the United States because the registration issued on the basis of a foreign counterpart registration, *see id.*

§ 1126(e), cancellation is proper if a lack of intent to commence use in the United States accompanies the nonuse. *See Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582, 14 USPQ2d 1390, 1395 (Fed.Cir. 1990).

■ Under the law in effect in 1991, when Linville commenced the cancellation procedure, a petitioner established a *prima facie* case of abandonment with proof of nonuse in the United States for two consecutive years. *See* 15 U.S.C. § 1127; ** *Imperial Tobacco*, 899 F.2d at 1579, 14 USPQ2d at 1393. The *prima facie* case "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [his] case," and creates a rebuttable presumption that the registrant abandoned the mark without intent to resume or commence use under the statute. *See Imperial Tobacco*, 899 F.2d at 1579, 14 USPQ2d at 1393. This presumption shifts the burden to the registrant to produce evidence that he either used the mark during the statutory period or intended to resume or commence use. *See Cerveceria Centroamericana S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1026, 13 USPQ2d 1307, 1312 (Fed.Cir. 1989). The burden of persuasion, however, always remains with the petitioner to prove abandonment by a preponderance of evidence. *See id.*

■ A registrant's proclamations of his intent to resume or commence use in United States commerce during the period of nonuse are awarded little, if any, weight. *See Imperial Tobacco*, 899 F.2d at 1581, 14 USPQ2d at 1394 ("In every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest."). The registrant may prove absence of intent to abandon the mark, however, by showing "special circumstances which excuse [its] nonuse." *Id.*, 899 F.2d 1575, 14 USPQ2d at 1395. To prove excusable nonuse, the registrant must produce evidence showing that, under his particular circumstances, his activities are those that a reasonable businessman, who had a bona fide intent to use the mark in United States commerce, would have undertaken. *See id.*, 899 F.2d

1575, 14 USPQ2d at 1394–95 (requiring evidence "with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred").

■ Abandonment is a question of fact. We sustain the board's fact findings unless they are clearly erroneous. *See Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1579, 222 USPQ 665, 667 (Fed.Cir. 1984).

■ Linville established a *prima facie* case that Rivard abandoned the ULTRACUTS mark because he did not use it in connection with hair dressing and beauty salon services in the United States during the relevant time period. 31 USPQ2d at 1220. Although Rivard produced evidence potentially showing his intent to begin use, the board found it insufficient to rebut the presumption of abandonment. We have not been shown why this was wrong.

The record reveals that, between 1986 and 1991, Rivard made sporadic trips to the United States, cursory investigations of potential sites for salons, and half-hearted attempts to initiate the business relationships necessary to open a salon. The board made these explicit factual findings, *see* 41 USPQ2d at 1739–40, and significant evidence supports them. Based on these findings, the board reasonably inferred that Rivard did not have the requisite intent to commence use of the ULTRACUTS mark in the United States.

The only evidence suggesting that these activities were remotely connected to a long-range plan for opening salons in the United States is Rivard's own testimony. This evidence is nothing more than his denial of an intent to abandon the ULTRACUTS mark, which the board rightfully discounted. *See Imperial Tobacco*, 899 F.2d at 1581, 14 USPQ2d at 1394 ("[O]ne must ... proffer more than conclusory testimony or affidavits."). His actions during his period of nonuse are not those that a reasonable businessman would take pursuant to a plan to use the

---

** Section 45 of the Trademark Act was amended, effective January 1, 1996, to extend the minimum period of nonuse to three consecutive years to establish a *prima facie* case. *See* Uruguay Round Agreements Act, Pub.L. No. 103–465, § 521, 108 Stat. 4809, 4981–82 (1994).

mark. Although Rivard states that he used his own business judgment in deciding not to open salons during this period, not every business reason excuses nonuse. *See id.* at 1578, 899 F.2d 1575, 14 USPQ2d at 1392. The board found, moreover, that "within months of receiving notice of [Linville's] cancellation proceeding, [Rivard] negotiated license agreements with three United States entities to use the ULTRACUTS mark to render such services in the United States, and settled on a city in which to open a hair styling salon ... which appears to be lacking in the features [that, according to Rivard's testimony, he had] previously deemed essential" to a salon's location. 41 USPQ2d at 1740. This finding, which is supported by the record, not only detracts from Rivard's credibility, but also more than adequately supports the conclusion that Rivard's approximately five years of nonuse is not excusable.

### Conclusion

Accordingly, the decision of the United States Trademark Trial and Appeal Board to cancel Rivard's registration is affirmed.***

*AFFIRMED.*

---

*** Because we affirm the board's decision based on Rivard's failure to rebut the *prima facie* case, we do not reach the issue of whether he abandoned the ULTRACUTS mark by granting naked licenses or failing to adequately police the unauthorized use of the mark.