THIS OPINION IS A
PRECEDENT
OF THE TTAB

Mailed: February 28, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Wirecard AG*

*v.*

*Striatum Ventures B.V.*

———

Cancellation No. 92069781

———

Jutta M. Frankfurter of Riebling IP PLLC, for Opposer Wirecard AG.

Alexander S. Lazouski of Lazouski IP LLC, for Applicant Striatum Ventures B.V.

———

Before Taylor, Adlin, and Dunn, Administrative Trademark Judges.

Opinion by Dunn, Administrative Trademark Judge:

Striatum Ventures B.V. (Respondent) owns Registration No. 4834250 that issued October 20, 2015 under Trademark Act Section 66(a), 15 U.S.C. § 1141f, for the mark depicted below,



for the following goods and services ("the ZUPR goods and services"):

International Class 9
Software for checking and searching properties of products and services sold in physical stores and for locating goods and services sold in physical stores; software for communication with smart phone users; downloadable electronic computer databases for connecting products and services to geographical locations; software for the identification of products and services and for entering product information and data into computer databases; computer software and hardware for database stock control; software for monitoring client behavior; software for use with loyalty cards.

International Class 35
Business administrative services concerning the automatized collection of information with respect to points of sale for retailers; compilation of information into computer databases in the field of products, services, geographic locations, consumer and client behavior and physical shops; marketing services provided by means of indirect methods of marketing communications, namely, search engine marketing.

International Class 42
Design, development and provision of search engines to check and search properties of goods and services sold in physical stores and to locate goods and services sold in physical stores; design and development of computer databases that connects products and services to geographical locations; design, development and provision of online non-downloadable software to identify goods and services, and to enter product information and data into computer databases; design, development and provision of online non-downloadable software for database stock control; design, development and provision of online non-downloadable software to monitor customer and consumer behavior; design, development and provision of online non-downloadable loyalty card software.

Wirecard AG (Petitioner) petitioned to cancel the registration in all three classes on the ground of abandonment. 1 TTABVUE.[1] In its answer, Respondent denied the salient allegations of the petition to cancel. 4 TTABVUE.

---

[1] TTABVUE refers to the Board's electronic docket, the location on the USPTO website where the publicly viewable trial record and briefs can be found. The first number is the docket entry and the second, if applicable, is the page within the entry.

Because the Trademark Trial and Appeal Board identified this proceeding as a candidate for its expedited cancellation pilot program, the Board participated in a conference with the parties to discuss voluntary stipulation to one or more of the Board's several Accelerated Case Resolution (ACR) options. 6 TTABVUE. *See Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 128 USPQ2d 1370, 1376 (Fed. Cir. 2018) (the parties waived objections to the admissibility of the evidence, without prejudice to their rights to argue the probative value of such evidence, in order to take advantage of the TTAB's Accelerated Case Resolution procedure). The parties agreed to litigate this case as an expedited cancellation proceeding, and waived disclosures and discovery. The parties submitted a signed ACR stipulation that included undisputed facts, an agreement to file testimony and documentary evidence together with their main briefs in lieu of trial, and a provision that "the Board may resolve any genuine issues of material fact that would be necessary to the Board's resolution of the case on its merits." 9 TTABVUE 2. The Board approved the parties' stipulation to go forward as an ACR proceeding. 10 TTABVUE.

## I.  THE PLEADINGS

Petitioner pleads that it owns Application Serial No. 88029940 for the mark SUPR (in standard characters) for various computer goods and services, and that it will be damaged by continued registration of Respondent's subject Registration No. 4834250 "including its ability to secure a registration for its SUPR mark." 1 TTABVUE 5-7. As the sole ground for cancellation, Petitioner alleges that Respondent "has either never used the Registered Mark in commerce, or completely ceased using the mark

with any or all of the goods and services identified in U.S. Registration No. 4834250 in any commercial activity lawfully regulated by the U.S. Congress, including for a non-use period of at least three (3) consecutive years," and that "Respondent had and has no intent to resume use." 1 TTABVUE 7. We accept these allegations as pleading both that Respondent has made no use of its mark in commerce ever, and, in the alternative, that, if Respondent commenced use of its mark in commerce, abandonment followed.

## II. DESCRIPTION OF THE RECORD

The pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the registration file of Respondent's mark are automatically of record.

### A. STIPULATIONS (9 TTABVUE 2, 5):

i.    Petitioner has standing to bring this Cancellation.[2]

ii.   Since the [October 20, 2015] date of issuance of the ZUPR Registration and the [May 28, 2019] date of the Parties' Joint Stipulation, none of the ZUPR Goods and Services have been sold in the United States.

### B. PETITIONER'S EVIDENCE[3]

i.    May 2, 2019 Declaration and exhibits by John Shoenfelt, Marksmen Inc. investigator, with report on the results of his June 4, 2018 search of business directories, public records, the Internet including social media sites and

---

[2] Paragraph 8.b. of the Joint Stipulation recites the fact that Respondent's registration "was cited by the USPTO as a basis for refusal of the SUPR Application." 9 TTABVUE 3.

[3] The parties stipulated to "offer into evidence testimony by declaration or affidavit so long as previously provided by the offering party to the other party prior to the date of this Joint Stipulation, and the Parties agree that any such declaration or affidavit shall be admissible even though executed before and not during the testimony period of a Party." 9 TTABVUE 2.

archived news databases, and attempts to contact Respondent through phone, email, and website (Shoenfelt Dec., 12 TTABVUE 3-22, 13 TTABVUE 3-16);

ii. May 2, 2019 Declaration of Jason Philippi, manager with investigator Marksmen, Inc., introducing a June 5, 2018 summary report of the investigation conducted by John Shoenfelt reporting no trademark or service mark use of the subject ZUPR and design mark in the U.S. with any goods or services (Philippi Dec., 11 TTABVUE 6-7);

iii. Online definition of "resume" from Merriam-Webster.com. (14 TTABVUE 8-10); and

iv. Wikipedia list of territorial entities where English is an official language. (14 TTABVUE 12-20).

## C. RESPONDENT'S EVIDENCE

i. July 22, 2019 and May 3, 2019 declarations of Michiel Vos, Respondent's founder and Director, describing activities involving the subject ZUPR and design mark (Vos Dec.,16 TTABVUE 14-17, 19-22);

ii. May 1, 2019 declaration of Nehmi Klaassen, a representative from the Quill public relations agency, describing activities involving the subject ZUPR and design mark (Klaassen Dec., 16 TTABVUE 29-30);

iii. May 1, 2019 declaration of Barbara Olano-Marques, a freelance online marketing professional, describing activities involving the subject ZUPR and design mark (Olano-Marques Dec.,16 TTABVUE 26-27);

iv. July 29, 2019 declaration of Respondent's counsel describing exhibits (16 TTABVUE 45-46);

v. ZUPR Facebook page (16 TTABVUE 32-34);

vi. ZUPR LinkedIn page (16 TTABVUE 36-38);

vii. Multimedia file with Respondent's two YouTube videos explaining the basic concept of the ZUPR platform (18 TTABVUE).[4]

### D. RESPONDENT'S CONFIDENTIAL DOCUMENTS[5]:

viii. ZUPR PR & Marketing Strategy (17 TTABVUE);

ix. Public relations report on ZUPR PR & Marketing Strategy (17 TTABVUE);

x. ZUPR Sales Slide Deck (17 TTABVUE);

xi. Public relations invoice sent to Respondent (17 TTABVUE);

xii. February 6, 2017 service contract between Respondent and public relations firm for ZUPR strategy (17 TTABVUE).

### III. DISCUSSION

#### A. STANDING

The parties stipulated that Petitioner has standing to bring the petition, noting that Respondent's registration was cited as a bar to registration of Petitioner's SUPR

---

[4] Trademark Rule 2.126 requires submissions to the TTAB via ESTTA. However, because ESTTA cannot accept audio or video files, the party who wishes to submit such files must record the materials on an appropriate medium, such as a CD-ROM or DVD, and physically file that medium with the Board. *See Hunter Industries, Inc. v. Toro Co.*, 110 USPQ2d 1651, 1654 fn. 7 (TTAB 2014), *appeal dismissed per stipulation*, No. 14-CV-4463 (D. Minn. January 15, 2016), and Trademark Trial and Appeal Board Manual of Procedure (TBMP) §703.01(i) (2019).

[5] Any evidence designated as confidential is discussed in general terms.

mark.[6] *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) ("to have standing in this case, it would be sufficient that appellee prove that it filed an application and that a rejection was made because of appellant's registration.").

## B.  ABANDONMENT

Use in commerce prior to registration is not required for registrations issued pursuant to Trademark Act Section 66(a), 15 U.S.C. § 1141(f). *See* Trademark Act Section 68(a)(3), 15 U.S.C. § 1141h(a)(3) ("Extension of protection shall not be refused on the ground that the mark has not been used in commerce.").[7] However, after registration, the registration is subject to the same grounds for cancellation as those registrations issued under Section 1 or Section 44(e), including abandonment. *See Saddlesprings, Inc.*, 104 USPQ2d at 1951 ("once a U.S. registration issues based on Section 66(a), the registration is subject to the same grounds for cancellation as those registrations issued under Section 1 or Section 44(e)") (citations omitted).

---

[6] 9 TTABVUE3, 15 TTABVUE 7. Standing may be established by admissions in the answer or by stipulation of the parties pertaining to the alleged facts supporting standing. *See Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 190 (CCPA 1982) (admissions in the answer); *Kemi Organics, LLC v. Gupta*, 126 USPQ2d 1601, 1604 (TTAB 2018) (stipulation of the parties). To be clear, while the parties may not stipulate to a plaintiff's standing in the absence of supporting facts, thereby creating standing where none otherwise exists, the parties may stipulate as to the facts which would support standing, eliminating the need for separate proof of those facts. *Accord Melwani v. Allegiance Corp.*, 97 USPQ2d 1537, 1542 (TTAB 2010) ("It is incumbent upon opposer to establish his standing, in the absence of an admission or stipulation from applicant.").

[7] "Under Section 66(a) of the Trademark Act,2 15 U.S.C. § 1141f(a), the holder of an international registration may file a request for extension of protection of that registration to the United States. An applicant who files such a request must declare its intention to use the mark in the United States, Section 66 of the Trademark Act, 15 U.S.C. § 1141f(a), and the resulting U.S. application is subject to examination and opposition, Section 68 of the Trademark Act, 15 U.S.C. § 1141h." *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 104 USPQ2d 1948, 1950 (TTAB 2012).

Here, Petitioner has pleaded in the alternative that the Respondent's mark has never been used, or, if use ever began, it stopped for at least three years. The Board and the United States Court of Appeals for the Federal Circuit have had occasion to consider the question of a "never used" mark in connection with abandonment, and have found that, so long as the period during which the mark was never used is alleged to be at least three years, or alleged to be less than three years but is accompanied by the necessary lack of intent to resume (or commence) use, a pleading that the mark was "never used" pleads the necessary nonuse for an abandonment claim. In other words, so long as the claim that the mark was never used specifies a period of three years of nonuse, the claim that the mark was never used also pleads the nonuse necessary for the prima facie case for abandonment. Accordingly, we do not treat the alternative arguments for abandonment as separate claims. *See Imperial Tobacco Ltd. v. Philip Morris Inc.*, 899 F.2d 1575, 14 USPQ2d 1390, 1395 (Fed. Cir. 1990) ("We see no justification to adopt a different or more liberal interpretation of the statute [with respect to abandonment] in connection with a mark of a section 44(e) registrant which has never been used in this country."); *Saddlesprings, Inc.*, 104 USPQ2d at 1950 ("petitioner has alleged that respondent has either never used the registered mark in commerce or completely ceased using the mark in commerce, in connection with the goods identified in the registration, for at least a period of three consecutive years. … The facts alleged by petitioner set forth a prima facie claim of abandonment.").[8]

---

[8] *See also ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036, 1042 (TTAB 2012) ("With respect to the vast majority of the goods … respondent has admitted that he has not used the

Abandonment occurs when "use [of a mark] has been discontinued with intent not to resume such use. Intent not to resume use may be inferred from circumstances." Section 45 of the Trademark Act, 15 U.S.C. § 1127. The Trademark Act states that "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment. *See City Nat'l Bank v. OPGI Mgmt. GP Inc./GestionOPGI Inc.*, 106 USPQ2d 1673, 1678 (TTAB 2013) ("A presumption of abandonment based on three years nonuse may be invoked against a [] registrant who never begins use of the mark or who discontinues using the mark."). 'Use' of a mark means the "bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The Board has found that use in commerce contemplates "commercial use of the type common to the particular industry in question." *Lewis Silkin LLP v. Firebrand LLC*, 129 USPQ2d 1015, 1018 (TTAB 2018). Introduction of evidence of nonuse of a mark for three consecutive years constitutes a prima facie showing of abandonment and triggers a rebuttable presumption that a mark was abandoned without intent to resume use. *Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1180 (TTAB 2017) (citing *Rivard v. Linville*, 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998)).

---

mark on these 109 items and has no intention to do so. This is sufficient to prove abandonment as to those goods."); *cf. The Procter & Gamble Co. v. Sentry Chemical Co.*, 22 USPQ2d 1589, 1592 (TTAB 1992) ("We specifically reiterate here that the ground of abandonment is properly established by a party who pleads and proves that the owner of a registration (including a registration in existence for more than five years) is not using (or has never used) its mark on certain goods that are within the scope of the goods recited in the certificate of registration; that the registrant has no intention to resume (or commence) use on such goods; and [for Section 18 purposes] that the restriction sought is a commercially significant one.").

The rebuttable presumption shifts the burden of production to the party contesting the abandonment to submit evidence of either: (1) use of the mark during the statutory period of nonuse; or (2) activities reflecting an intent to resume (or commence) use during the nonuse period. *Id.*[9] The burden of persuasion however, always remains with the party asserting abandonment, which must prove it by a preponderance of evidence. *See Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989). "In the absence of justifiable non-use, Section 66(a) registrations which have never been used, or for which use has been discontinued with no intent to resume use, may be subject to cancellation for abandonment even if the international registration remains valid and subsisting." *Saddlesprings, Inc.*, 104 USPQ2d at 1952. Because the subject registration issued under Section 66(a), the earliest date on which the three-year period for the statutory presumption of abandonment may begin in this case is the registration date, October 20, 2015. *Dragon Bleu (SARL) v. VENM, LLC*, 112 USPQ2d 1925, 1931 (TTAB 2014).

To cancel the entire registration, Petitioner must prove abandonment of the mark as to each of the three classes of goods and services. *Cf. Federated Foods, Inc. v. Fort*

---

[9] The Federal Circuit has found that the statutory language "intent not to resume" use is "appropriate for the usual situation in which a registered mark has been used at some time in this country.*" Imperial Tobacco Ltd. v. Philip Morris Inc.,* 14 USPQ2d at 1394. In *Imperial Tobacco*, the Federal Circuit held that the language "intent to begin use" or "intent to use" is an appropriate adaptation of the statutory language in the situation of a never-used mark registered on the basis of foreign rights. *Id.* at 1395. *Accord Rivard v. Linville*, 45 USPQ2d at 1376 ("Where a registrant has never used the mark in the United States because the registration issued on the basis of a foreign counterpart registration, ... cancellation is proper if a lack of intent to commence use in the United States accompanies the nonuse.").

*Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 28 (CCPA 1976) ("We conclude, therefore, that this opposition proceeding as to four classes of a combined application is, effectively, four different oppositions which require four different factual determinations and four different conclusions on the ultimate issue of likelihood of confusion under § 2(d)."). However, evidence may pertain to goods and/or services in multiple classes. In this case, because the ZUPR goods and services are interrelated, neither party parses out evidence applicable to each registered class. Both rely upon the same evidence to argue their different positions regarding the three classes of the ZUPR goods and services.

### i.  NONUSE FOR THREE YEARS

A mark is in use in commerce on goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and the goods are sold or transported in commerce;" a mark is in use in commerce on services when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services." Trademark Act Section 45, 15 U.S.C. §1127.

Petitioner relies on the parties' stipulation that "Since the [October 20, 2015] date of issuance of the ZUPR Registration and the date of the Parties' May 28, 2019 Joint Stipulation, none of the ZUPR Goods and Services have been sold in the United

11

States."[10] Petitioner also contends that any U.S. use of the ZUPR mark was intended for the future, and offers the May 3, 2019 declaration of Respondent's founder and Director, Michiel Vos, averring that he engaged a marketing specialist who might be able to interest a retailer in using the ZUPR platform which states: "I informed Ms. [Olano-] Marques that we intend to launch ZUPR platform in US in the first or second quarter of 2019."[11]

Petitioner additionally relies on the declarations of its two investigators. In his declaration, John Shoenfelt, the primary investigator, avers that: the website for Respondent featuring the ZUPR mark is a single page; a search of Internet archives shows there has never been a Respondent website featuring the ZUPR mark comprising more than the single page; Respondent's website featuring the ZUPR mark is a single page which links to two videos explaining the ZUPR platform; and searches of social media, Nexis news databases, and the Internet in general yielded no references indicating that the ZUPR platform, or the component goods and services listed in the subject registration, are in use in the United States.[12] Based on this evidence, as well as the stipulation and Vos declaration, we find Petitioner has established a prima facie case that Respondent abandoned the ZUPR mark through nonuse from October 20, 2015 through the present, that is, through nonuse for three consecutive years subsequent to the date of registration. Thus, there is a rebuttable presumption that the mark was never used by Respondent, and thus has been abandoned without intent to resume use.

---

[10] 9 TTABVUE 5.
[11] 14 TTABVUE 5.
[12] 12 TTABVUE 3-14.

Respondent counters that the posting of its YouTube video on January 4, 2018, within the three-year period following registration, shows use of the ZUPR mark in the ordinary course of trade with the registered goods and services.[13] Respondent argues that "[t]he video clearly shows the Mark and explain[s] the basic concepts behind [the] ZUPR platform. It also contains a phrase 'Interested to know how Zupr can improve your offline sales as a brand or retailer? Please visit our website at www.zupr.io. https://www.zupr.io/en/.'"

Under the Trademark Act, use of the mark requires that "the goods are sold or transported in commerce" and "the services are rendered in commerce." Trademark Act Section 45. Respondent's video describes no more than "the basic concepts" behind the ZUPR platform. The invitation to contact Respondent is part of Respondent's development of the goods and services, and is not an indication that the goods or services are available. As set forth above, the website mentioned in the video was the single page which did not offer software, a database, business or computer services, or any detailed information other than the video. We agree with Petitioner that this video describes goods and services to be offered under the mark in the future, and is not sufficient to show use on either goods or services in commerce. *See Couture v. Playdom, Inc.*, 778 F.3d 1379, 113 USPQ2d 2041, 2043 (Fed. Cir. 2015) (single page website offering more information about services not yet provided does not meet the

---

[13] 16 TTABVUE 7. The record includes both January 4, 2018 and January 4, 2019 as the date that the YouTube video was posted. With its ACR brief Respondent included the declaration of counsel averring, among other things, that the references to January 4, 2019 as the YouTube posting date were typographical errors. Petitioner's investigator's report refers to a ZUPR Youtube video viewed June 4, 2018 that was "uploaded about five months prior." 12 TTABVUE 12. We have relied on the corrected January 4, 2018 date.

use in commerce requirement); *Aycock Eng'g, Inc. .v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1306 (Fed. Cir. 2009) ("Without question, advertising or publicizing a service that the applicant intends to perform in the future will not support registration.").

More specifically, the video itself does not constitute software or a database as described in the registration, and there is no reference in the video to any available database of, for example, physical store locations and their inventory, or any software allowing purchasers to search for goods in physical stores. In addition, the video does not constitute either business or computer services as described in the registration, and there is no reference in the video to any available service, much less the services identified in the registration. In fact, the declaration of Respondent's Director does not state that the ZUPR goods and services were available at the time the video was posted, but asserts "Such advertisements were created in English to increase awareness about our brand in US and possibly to attract some clients."[14] Because Respondent has not shown use of the mark during the statutory period of nonuse, we find that Petitioner has established a prima facie case of abandonment. Thus, there is a rebuttable presumption that Respondent abandoned the mark without intent to commence use.

### ii. INTENT TO BEGIN USE

As set forth above, with Petitioner's showing that Respondent has not yet used the mark in the United States, the "presumption shifts the burden to the registrant

---

[14] 16 TTABVUE 21.

to produce evidence that he … intend[s] to … commence use." *Rivard v. Linville*, 45 USPQ2d at 1376. Respondent may establish its intent to commence use by showing "special circumstances" relevant to its nonuse. *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 14 USPQ2d at 1395. This is the same standard used to assess whether a mark once in use has been abandoned. *Id.*; *Double Coin Holdings Ltd. v. Tru Dev.*, 2019 USPQ2d 377409 n.53 (TTAB 2019) ("Although the term 'excusable nonuse' in abandonment cases pertains to either the resumption or commencement of use … the same standard for abandonment under Section 45 of the Act applies."). Conclusory statements, even if sworn, regarding intent – intent to resume or intent to commence – are insufficient to rebut a prima facie case of abandonment. *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 14 USPQ2d at 1394-1395; *accord Rivard v. Linville*, 45 USPQ2d at 1376 ("A registrant's proclamations of his intent to resume or commence use in United States commerce during the period of nonuse are awarded little, if any, weight.") (citation omitted). To prove intent to begin use, Respondent must produce evidence showing that, under its particular circumstances, its activities are those that a reasonable business with a bona fide intent to use the mark in United States commerce would have undertaken. *Rivard v. Linville*, 45 USPQ2d at 1376; *Reynolds Televator Corp. v. Pfeffer,* 173 USPQ 437, 439 (TTAB 1972) ("A resolution of this question [of intent to commence use] involves a consideration of a number of factors including the nature and character of the goods, the feasibility of producing the goods, the actual or potential market for the goods, and the steps taken by respondent which

could possibly result in the movement of the goods under the registered mark 'in commerce' within the foreseeable future.").

Respondent's Vos declaration avers that in 2016, at a Lisbon trade conference, Vos met a representative from a public relations agency (Klaassen) with strong ties to the U.S. market, and sought her assistance in developing a marketing strategy for the ZUPR platform globally and for the U.S. market; that in early 2017, Respondent signed a service agreement with the public relations firm for the marketing strategy; that the marketing strategy involved sales presentations specifically developed for the U.S. market; that the marketing strategy suggested redesign of the ZUPR platform "to customize it to the U.S. market"; and that later in 2017, Vos negotiated with an online marketing specialist (Olano-Marques) responsible for marketing an Italian clothing brand in the U.S.[15]

The Vos declaration also avers that on January 4, 2018, Respondent posted a YouTube video explaining the concept of the ZUPR platform; and that in 2018, Vos also negotiated with Olano-Marques for a license of the ZUPR platform for various promotional activities in geographical locations with a number of retailers in the U.S., such as shopping malls, hotel chains, airports, and city districts; and that also in 2018, Vos presented Klaassen with the redesigned ZUPR platform, and informed her of his intent to launch the platform in the U.S. in 2019; that Vos also informed Olano-Marques of his intent to launch the ZUPR platform in the U.S. in 2019, and that

---

[15] 16 TTABVUE 19-22.

Olano-Marques agreed to implement the ZUPR marketing platform for an Italian clothing brand in the U.S. shortly after the launch.[16]

The Vos declaration additionally avers that in January 2019, Vos learned from Olano-Marques that she no longer represented the Italian clothing brand but wished to discuss how the ZUPR platform could help a U.S. retailer of Dutch furniture in the U.S. market; and that on February 15, 2019, Respondent posted a different YouTube video explaining the ZUPR platform.[17] The declaration is supported by the YouTube videos, and confidential exhibits including the marketing contract, invoice for marketing services, the marketing report and sales deck.[18]

Ms. Klaassen corroborates the Vos testimony, averring that she works for the public relations firm The Quill; that in 2016 she met Vos at a trade conference; that in 2017 her firm was hired by Respondent to prepare U.S. and global product launches under the ZUPR brand name; that the marketing strategy was delivered but could not be implemented because Respondent decided to rebuild most of its ZUPR platform; and that she continued to consult with Vos, and received a demonstration of the updated software in August 2018 when Vos announced plans to launch in the U.S. in 2019.[19]

Ms. Olano-Marques also corroborates the Vos testimony, averring that she is a freelance online marketing professional based in Miami, FL, previously responsible for, among other things, the U.S. marketing of an Italian clothing company, and

---

[16] *Id.*
[17] *Id.*
[18] 16 TTABVUE 19-22.
[19] 16 TTABVUE 29-30.

currently responsible for, among other things, marketing for a U.S. retailer of Dutch furniture; that from November 2017 until January 2019, she has been in regular talks with Vos regarding use of the ZUPR platform by the two companies she represented, and also regarding a ZUPR software license; and with the 2019 launch of the ZUPR platform, she will work with Respondent to jointly develop store locator apps for U.S. shopping areas.[20]

Petitioner contends that Respondent's activities fail to show any consistent or sustained effort to begin use in commerce. We disagree.

On this record, we find that Respondent's activities are the type that would be undertaken by a reasonable business with a bona fide intent to use the mark in United States commerce with a retail platform comprising software, databases, business services, and computer services which allow consumers to connect to multiple retailers to locate specific goods in physical retail stores within specific geographic areas. Following registration in the U.S., Respondent entered into a contract for a U.S. marketing strategy, retooled its platform in response to that marketing strategy, demonstrated the retooled products to its public relations firm, and reached agreement at least orally with a retailer's representative to use the ZUPR goods and services in the U.S. following the product launch in 2019. On October 22, 2018, the petition to cancel was filed, forestalling the planned 2019 launch.

More specifically, we find it reasonable that Respondent's activities focused primarily on the technical computer software and design services of the ZUPR

---

[20] 16 TTABVUE 26-27.

platform, and that the strongest evidence of intent to commence use is shown in connection with the International Class 9 goods and International Class 42 services. However, the Class 35 business services as defined in the registration are dependent on the software and software design for the automatized collection and compilation of retail information and search engine marketing, and would be deployed together in the platform. Therefore, the activities surrounding the software also demonstrate intent to commence use for the three different classes of goods and services.

We find the timing of this proceeding to be relevant. First, the platform launch in early 2019 had been announced to prospective participants before the petition to cancel was filed at the end of 2018. If the launch had taken place, even though outside the three year nonuse period, it also would support the testimony regarding intent to commence use. *See Crash Dummy Movie, LLC v. Mattel, Inc.,* 601 F.3d 1387, 94 USPQ2d 1315, 1317 (Fed. Cir. 2010) ("The Board may consider evidence and testimony regarding Mattel's practices that occurred before or after the three-year statutory period to infer Mattel's intent to resume use during the three-year period."). The launch did not take place, but in view of the filing of the petition to cancel, the failure to launch does not detract from the activities demonstrating intent to commence use. *See Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 223 USPQ 979, 982 n. 6 (Fed. Cir. 1984) ("Ralston has rebutted any prima facie showing of abandonment arising from nonuse of its mark for two consecutive years by evidence of its intent to resume such use … it was only prudent for Ralston to

refrain from use of its mark following ON-COR's filing of its opposition on August 10, 1981").

Considering the nature of the registered goods and services, their interrelationship, and the timing of the petition to cancel, we find the record demonstrates that Respondent had the requisite intent to commence use in commerce of its ZUPR mark with the International Class 9 goods, and the International Class 35 and 42 services. *See Oromeccanica, Inc. v. Ottmar Botzenhardt G.m.b.H. & Co. KG*, 223 USPQ 59 (TTAB 1983) ("The evidence shows a continuous effort to market the goods, including a market survey which was apparently initiated prior to the institution of this proceeding and was in progress throughout the testimony period."); *Reynolds Elevator Corp. v. Pfeiffer*, 173 USPQ at 440 ("In view of the [limited potential market for this transport system] and considering respondent's efforts to interest airports in the United States in installing his system from 1965 through 1966, his continuing efforts to obtain financial backing for building a prototype of the system, the fact that he assertedly succeeded in this direction in that a prototype was due for completion by the end of 1971, and airport officials in this country will be invited to view this prototype, albeit in Switzerland, with a view to introducing the system at their airports, we are persuaded that respondent's failure to use the mark 'TELEVATOR' 'in commerce' constitutes excusable non-use and that petitioner's claim of abandonment must fail.").

Upon consideration of this evidence, we find that Respondent has carried its burden of proving an intent to commence use in commerce with respect to all three

20

classes of the ZUPR goods and services during the three year statutory period of nonuse, and has rebutted Petitioner's prima facie showing of abandonment.

## IV. DECISION

The petition to cancel is denied.