THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
February 22, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

ShutEmDown Sports, Inc.
v.
Carl Dean Lacy

———

Cancellation No. 92049692

———

Robert Varkonyi of Smith & Hopen, P.A. for ShutEmDown
Sports, Inc.

Carl Dean Lacy, *pro se*.

———

Before Bergsman, Ritchie and Kuczma, Administrative
Trademark Judges.

Opinion by Kuczma, Administrative Trademark Judge:

ShutEmDown Sports, Inc. ("petitioner") filed a petition

for cancellation of Registration No. 3372975 for the mark

"Shut It Down," in standard character form, registered by

Carl Dean Lacy ("respondent"), for 113 items of clothing and

related goods in Class 25.[1]

The grounds for cancellation are abandonment of the

registered mark and fraud in the procurement of respondent's

trademark registration.  In support of its claim of

abandonment, petitioner alleges that respondent has not used

———

[1] Issued January 22, 2008.

or is no longer using the SHUT IT DOWN mark for the goods covered in Registration No. 3372975 and has no intent to resume use of the mark on such goods. The fraud claim alleges that respondent was not using the mark on the goods recited in the registration as of the filing date; that respondent knew the mark was not in use on the goods, both at the time of filing and when submitting a declaration in support of a substitute specimen; and that the misrepresentations of use were material to the U.S. Patent and Trademark Office's ("USPTO") decision to issue the registration.

Respondent, who appears *pro se* in this matter, denied the salient allegations in the petition for cancellation.

Petitioner submitted seven notices of reliance discussed below.[2] On the last day of its trial period,

---

[2] Petitioner's notices of reliance were filed 11 days prior to the opening of its trial period, i.e., "testimony period." Respondent did not raise any objection to the premature filing of the notices of reliance. Because the premature filing of the notices of reliance could have been cured if a prompt objection was made, any objection as to early filing of the notices of reliance is deemed to be waived. See, TBMP §§ 707.02(a) and (b) (3d ed. 2011); *Cf. Of Counsel Inc.* v. *Strictly of Counsel Chartered*, 21 USPQ2d 1555, 1556 n.2 (TTAB 1991)(where opposer's testimony deposition was taken two days prior to opening of opposer's testimony period, and applicant first raised an untimeliness objection in its brief on the case, objection held waived, because the premature taking of the deposition could have been corrected on seasonable objection).

petitioner timely submitted its opening trial brief.[3]  Prior

to the opening of his trial period, respondent filed an

unsigned, two-page document entitled "Trial Brief of

Registrant."  The Board's order of January 20, 2011,

notified the parties that the Board would not consider this

"brief" based on respondent's failure to comply with Board

rules.[4]  This is not the first time respondent failed to

follow the rules of practice and procedure.[5]

The order noted that respondent had time remaining in

his trial, i.e., "testimony," period and that petitioner's

rebuttal disclosures deadline and rebuttal period remained

---

[3] Pursuant to Rule 2.128, 37 C.F.R. § 2.128, the brief for the
party in the position of plaintiff is due not later than sixty
days after the date set for the close of rebuttal testimony.  The
Rule does not set an "opening" date for the filing of the
plaintiff's brief.  While it is not the usual circumstance that
the plaintiff's brief is filed during its testimony period, the
Rule does not preclude this.  Accordingly, petitioner's brief was
timely filed.

[4] The bases for the Board's order were that respondent's filing
lacked a certificate of service of a copy thereof on counsel for
petitioner as required by Rule 2.119(a), was not in compliance
with Rules 2.126 and 2.128(b), and requested relief which was
procedurally inappropriate during the trial phase.

[5] Respondent was advised of proper Board procedure on at least
eight occasions, including in the orders of July 23, October 15,
December 12, 2008; April 8, July 16, August 17 and December 23,
2009; and August 30, 2010.  These orders advised respondent that
strict compliance with the Trademark Rules and the Federal Rules
of Civil Procedure is expected by all parties whether or not
represented by counsel; and specifically noted in several of
these orders that compliance with Rules 2.119 and Rules 2.125-
2.128 was required.  The Board also advised respondent that it
was highly advisable to secure the services of an attorney
familiar with Board procedure and provided a telephone number for
general inquiries regarding Board procedure.  On several
occasions, the Board warned respondent that the Board might
decline to consider any paper that did not clearly indicate proof
of service required by Rule 2.119.

Cancellation No. 92049692

as previously set by the Board.  No subsequent evidence or briefs were submitted by either party.

## The Record

By rule, the record includes respondent's registration file.  Trademark Rule 2.122(b), 37 CFR § 2.122(b).  It also includes the petition for cancellation and respondent's answer to the petition.  In addition, petitioner introduced the following evidence:[6]

1.    Notice of reliance on petitioner's first request for production of documents and respondent's written responses thereto (Exhibit 1);[7]

2.    Notice of reliance on petitioner's first set of interrogatories and respondent's written responses thereto (Exhibit 2);

3.    Notice of reliance on petitioner's second request for production of documents and respondent's written

---

[6] The titles of Petitioner's Interrogatories and Document Requests erroneously used the term "Applicant's" instead of "Petitioner's." Throughout this decision, we will use the term "petitioner's" in substitution for the term "applicant's" when referring to these documents.

[7] While documents produced in response to document production requests generally cannot be made of record via a notice of reliance, 37 C.F.R. § 2.120(j)(3)(ii) and TBMP § 704.11, written responses to document production requests, such as these, indicating that no responsive documents exist may be submitted via a notice of reliance. *See L.C. Licensing Inc*. v. *Berman*, 86 USPQ2d 1883, 1886 at n. 5 (TTAB 2008).

4

Cancellation No. 92049692

responses (Exhibit 3);[8]

4.    Notice of reliance on petitioner's third request for production of documents and respondent's written responses thereto (Exhibit 4);[9]

5.    Notice of reliance on "Official Records Mississippi Code" consisting of printouts from the Mississippi Department of State link to the *LexisNexis* website for §§ 27-65-43, 27-65-17, 27-65-31 of the Mississippi Code (Exhibit 5);

6.    Notice of reliance on printouts from the USPTO website consisting of selected portions of the application file for Serial No. 78837567 which matured into Registration No. 3372975 (Exhibit 6);[10] and

---

[8] As set forth in note 7, the document production requests and written responses thereto may be submitted via a notice of reliance. However, a number of the attachments submitted with this notice of reliance are not proper subject matter for introduction by notice of reliance (e.g., a letter from the Internal Revenue Service, invoices, delivery notes and DISCOVER credit card statements). 37 C.F.R. § 2.120(j)(3)(ii). These attachments were apparently received by petitioner in response to its Second Request for Production of Documents to Registrant. It is well settled that a party that has received documents produced by another party in response to a request for production of documents may not make such documents of record by notice of reliance alone, except to the extent that they are admissible by notice of reliance under Trademark Rule 2.122(e); 37 C.F.R. § 2.122(e). The foregoing documents do not fall within the category of printed publications as contemplated under Rule 2.122(e) and, therefore, have not been considered as evidence.

[9] For the reasons set forth in note 7, these documents may be submitted via a notice of reliance.

[10] Pursuant to Rule 2.122(b), the record automatically includes the application file for Registration No. 3372975 which is the subject of the petition for cancellation, and therefore submission of these excerpts was unnecessary.

7.    Notice of reliance on printouts from the USPTO website consisting of selected portions of petitioner's application Serial No. 77308774, namely, its application filed October 19, 2007, and the Office Action of January 31, 2008 refusing registration of petitioner's mark under § 2(d) of the Trademark Act based on a likelihood of confusion with respondent's Registration No. 3372975. (Exhibit 7).[11]

The respondent did not introduce any testimony or evidence.

**Findings of Fact**

1.    Respondent filed application Serial No. 78837567 to register the mark SHUT IT DOWN under 15 U.S.C. § 1051(a) on March 15, 2006, for the following 113 items in Class 25:

> Anglers' shoes; Apres-ski shoes; Athletic shoes; Ballet shoes; Balloon pants; Baseball shoes; Beach shoes; Belts; Bibs not of cloth or paper; Bowling shoes; Boxing shoes; Camp shirts; Canvas shoes; Capri pants; Caps; Children's and infants' cloth bibs; Children's cloth eating bibs; Cleats for attachment to sports shoes; Cloth bibs; Cloth bibs for adult diners; Cloth bibs for use by senior citizens or physically- or mentally-challenged persons; Cloth diapers; Clothing for wear in judo practices; Clothing for wear in wrestling games; Clothing, namely, arm warmers; Clothing, namely, folk costumes; Clothing, namely, knee warmers; Clothing, namely, wrap-arounds; Corsets; Cycling shoes; Deck-shoes; Denims; Dress shirts; Dusters; Football shoes; Foulards; Golf shirts; Golf shoes; Gymnastic shoes; Handball shoes; Heel pieces (for shoes); Hockey shoes; Hoods; Infant and toddler one piece clothing; Infant cloth diapers; Infants'

---

[11] Contrary to the statement in petitioner's brief at p. 7, the record only consists of those portions of application Serial No. 77308774 that petitioner submitted via its notice of reliance (designated as Exhibit 7).

shoes and boots; Insoles; Jerseys; Jogging pants; Knit shirts; Leather belts; Leather pants; Leather shoes; Mantles; Mufflers; Night shirts; Non-disposable cloth training pants; Nurse pants; Open-necked shirts; Pants; Parts of clothing, namely, gussets for tights, gussets for stockings, gussets for bathing suits, gussets for underwear, gussets for leotards and gussets for footlets; Perspiration absorbent underwear clothing; Piquet shirts; Polo shirts; Protective metal members for shoes and boots; Rubber shoes; Rugby shoes; Running shoes; Shifts; Shirt fronts; Shirts; Shirts for suits; Shoe dowels; Shoe inserts for primarily non-orthopedic purposes; Shoe pegs; Shoe soles; Shoes; Shoes soles for repair; Short sets; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Shoulder pads for clothing; Shoulder wraps; Ski and snowboard shoes and parts thereof; Ski pants; Skiing shoes; Sleep shirts; Snow pants; Snowboard pants; Soccer shoes; Sport shirts; Sports shirts; Sports shirts with short sleeves; Swaddling clothes; Sweat pants; Sweat shirts; T-shirts; Tap pants; Tennis shoes; Ties; Toboggan hats, pants and caps; Tongue or pullstrap for shoes and boots; Tops; Track and field shoes; Track pants; Training shoes; Underarm clothing shields; Volleyball shoes; Waterproof jackets and pants; Wind shirts; Women's shoes; Work shoes and boots; Wraps

[Answer ¶ 8; Exhibit 6].

2. At the time of filing the original application underlying the registration sought to be cancelled, respondent identified use in commerce as the filing basis and, provided dates of use, a description of the specimen, and a specimen. [Exhibit 6].

3. The application included a declaration under 18 U.S.C. § 1001 stating, *inter alia*, that the undersigned, "being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both," "and that such willful false statements, and the like, may jeopardize the validity of the application or any

resulting registration," declares "that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true."

4.   Application Serial No. 78837567 identifies respondent as the applicant.  While the signature on the application utilized the symbols "#*#," identifying the signatory as "#*#" and having the title "OWNER," it is clear from subsequent filings that respondent utilized the electronic signature "#*#" to identify himself.  [File history for application Serial No. 78837567].[12]

5.   In his June 17, 2007 submission to the USPTO, respondent declared that "the mark was in use in commerce on or in connection with the goods listed in the application as of the application filing date"...and acknowledged that "willful false statements may jeopardize the validity of the application or any resulting registration."  [June 17, 2007 Response to Office Action].

6.   In his July 18, 2007 Response to an Office Action, respondent stated that he was "not represented by either an authorized attorney or Canadian attorney/agent. . . and that he is. . .the applicant . . ." [Answer ¶ 9; July 18, 2007 Response to Office Action].

---

[12] The filer of an electronic document may enter "any combination of letters, numbers, spaces and/or punctuation marks that the filer has adopted as a signature.  The signatory's name must be set forth beneath the signature."  TMEP § 611.01(c) (8th ed. 2011).

8

7.    The September 12, 2007 Response to an Office Action contained a handwritten signature of respondent's name, Carl Dean Lacy, which was dated September 5, 2007, and declared that the substitute specimen (submitted with the Response) was in use in commerce at least as early as the filing date of the application, that "the facts set forth in this application are true" and acknowledged that "willful false statements and the like may jeopardize the validity of the application or document or any resulting registration." [September 12, 2007 Response to Office Action].

8.    During discovery, respondent identified "T Shirt, Jogging Suit, Sox, Baseball Cap, Basketball Short, Jersey, Towel" as the only products he has offered for sale under the "SHUT IT DOWN" mark.  [Exhibit 2, Response to Interrogatory No. 2 of Petitioner's First Set of Interrogatories to Registrant, dated August 4, 2009].[13]

9.    Respondent stated that he "intends to use or has used [his SHUT IT DOWN] mark, or any variation thereof," on: "T Shirt, Jogging Suit, Sox, Baseball Cap, Basketball Short, Jersey, Towel."  [Exhibit 2, Response to Interrogatory No. 10 of Petitioner's First Set of Interrogatories to Registrant].

---

[13] Respondent's responses to Petitioner's Interrogatories were not verified, but were sent pursuant to Fed. R. Civ. P. 34, Trademark Rule 2.120 and TBMP § 405.04.

10.    Respondent stated that he first used his mark on "T Shirt, Jogging Suit, Sox, Baseball Cap, Basketball Short, Jersey, Towel" on February 3, 2006, and the mark is still used in commerce. [Exhibit 2, Response to Interrogatory No. 11 of Petitioner's First Set of Interrogatories to Registrant].

11.    Only 4 of the 7 items on which respondent claims to have used his mark are recited in Registration No. 3372975, namely, T-shirts, caps, jogging suits[14] and jerseys (hereafter referred to as "goods allegedly in use").

12.    Respondent also stated that he has used his mark on towels, sox and basketball shorts.  These items are not listed in his Registration.  [Exhibit 2, Response to Interrogatory No. 2 of Petitioner's First Set of Interrogatories to Registrant].

13.    Respondent has not used his mark on the remaining goods recited in Registration No. 3372975 (hereafter referred to as "goods admitted not in use"), namely:

> Anglers' shoes; Apres-ski shoes; Athletic shoes; Ballet shoes; Balloon pants; Baseball shoes; Beach shoes; Belts; Bibs not of cloth or paper; Bowling shoes; Boxing shoes; Camp shirts; Canvas shoes; Capri pants; Children's and infants' cloth bibs; Children's cloth eating bibs; Cleats for attachment to sports shoes; Cloth bibs; Cloth bibs for adult diners; Cloth bibs for use by senior citizens or physically- or mentally-challenged persons; Cloth diapers; Clothing for wear in

_____

[14] While "jogging pants" and "baseball caps" are recited in respondent's registration, we deem "jogging suits" and "jogging pants," and "caps" and "baseball caps," to be equivalent goods for purposes of this cancellation proceeding.

judo practices; Clothing for wear in wrestling games; Clothing, namely, arm warmers; Clothing, namely, folk costumes; Clothing, namely, knee warmers; Clothing, namely, wrap-arounds; Corsets; Cycling shoes; Deck-shoes; Denims; Dress shirts; Dusters; Football shoes; Foulards; Golf shirts; Golf shoes; Gymnastic shoes; Handball shoes; Heel pieces (for shoes); Hockey shoes; Hoods; Infant and toddler one piece clothing; Infant cloth diapers; Infants' shoes and boots; Insoles; Knit shirts; Leather belts; Leather pants; Leather shoes; Mantles; Mufflers; Night shirts; Non-disposable cloth training pants; Nurse pants; Open-necked shirts; Pants; Parts of clothing, namely, gussets for tights, gussets for stockings, gussets for bathing suits, gussets for underwear, gussets for leotards and gussets for footlets; Perspiration absorbent underwear clothing; Piquet shirts; Polo shirts; Protective metal members for shoes and boots; Rubber shoes; Rugby shoes; Running shoes; Shifts; Shirt fronts; Shirts; Shirts for suits; Shoe dowels; Shoe inserts for primarily non-orthopedic purposes; Shoe pegs; Shoe soles; Shoes; Shoes soles for repair; Short sets; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Shoulder pads for clothing; Shoulder wraps; Ski and snowboard shoes and parts thereof; Ski pants; Skiing shoes; Sleep shirts; Snow pants; Snowboard pants; Soccer shoes; Sport shirts; Sports shirts; Sports shirts with short sleeves; Swaddling clothes; Sweat pants; Sweat shirts; Tap pants; Tennis shoes; Ties; Toboggan hats, pants and caps; Tongue or pullstrap for shoes and boots; Tops; Track and field shoes; Track pants; Training shoes; Underarm clothing shields; Volleyball shoes; Waterproof jackets and pants; Wind shirts; Women's shoes; Work shoes and boots; Wraps.

14. Respondent stated that he has spent "$200+" annually to promote sales using the SHUT IT DOWN mark. [Exhibit 2, Response to Interrogatory No. 8 of Petitioner's First Set of Interrogatories to Registrant].

15. Respondent states that since he began use of the SHUT IT DOWN mark, his annual sales under the mark are "$100+." [Exhibit 2, Response to Interrogatory No. 9 of Petitioner's First Set of Interrogatories to Registrant].

11

16. Respondent stated that his operating expenses over the last five years are approximately $1,000 [Exhibit 2, Response to Interrogatory No. 29 of Petitioner's First Set of Interrogatories to Registrant], but respondent kept no documents relating to such expenses. [Exhibit 1, Response to Request Nos. 4 and 11 to Petitioner's First Request for Production of Documents to Registrant].

17. Respondent stated that 100% of his goods are sold by respondent to consumers in the state of Mississippi via word of mouth, but there are no documents to support this response. [Exhibit 2, Response to Interrogatory Nos. 15 and 16 of Petitioner's First Set of Interrogatories to Registrant].

18. Respondent, Carl Dean Lacy, is the person most knowledgeable about respondent's use of the SHUT IT DOWN mark, promotional activities using the mark, and expenditures to promote goods using the SHUT IT DOWN mark. [Exhibit 2, Response to Interrogatory Nos. 19-21 of Petitioner's First Set of Interrogatories to Registrant].

19. No one has purchased goods from respondent in the last five years. [Exhibit 2, Response to Interrogatory No. 27 of Petitioner's First Set of Interrogatories to Registrant].[15]

---

[15] As of the August 4, 2009, date of respondent's Response to Petitioner's First Set of Interrogatories to Registrant.

20. Respondent does not have a bank account; has no tax returns; did not keep copies of sales receipts, invoices and/or bills of service for goods using the mark for the last three years; has no sales documents used in selling or distributing goods; has no copies of any advertisements or promotional materials or other media advertising.[16] [Exhibit 1, Response to Request Nos. 1-4, 8-10 of Petitioner's First Request for Production of Documents to Registrant].

21. Respondent has no documents which relate to his first use of the SHUT IT DOWN mark. [Exhibit 1, Response to Request No. 6 of Petitioner's First Request for Production of Documents to Registrant].

22. Respondent stated that he has intended to use, used or disseminated a hang tag bearing the mark. [Exhibit 2, Response to Interrogatory No. 14 of Petitioner's First Set of Interrogatories to Registrant].

23. On October 19, 2007, Petitioner filed application Serial No. 77308774 to register the mark SHUT EM DOWN in standard characters for athletic wear, namely, basketball attire. In the Office action of July 31, 2008, registration of petitioner's mark was refused under § 2(d) of the Trademark Act on the basis that its mark, when used on or in

---

[16] As of the August 4, 2009 date of respondent's Response to Petitioner's First Document Request.

connection with its goods, so resembles respondent's mark shown in Registration No. 3372975 as to be likely to cause confusion, or to cause mistake or to deceive.  [Exhibit 7].

24.  Petitioner filed the subject Cancellation proceeding on July 22, 2008.

## A.  Standing

Standing is a threshold issue that must be proved in every *inter partes* case.  *See Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) ("The facts regarding standing. . . must be affirmatively proved.  Accordingly, [plaintiff] is not entitled to standing solely because of the allegations in its [pleading].").  To establish standing in a cancellation proceeding, petitioner must show both "a real interest" in the proceedings as well as a "reasonable" basis for its belief of damage.  See *Ritchie v. Simpson,* 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999).

Through a notice of reliance, petitioner introduced evidence of its pending application which has been refused registration based on a likelihood of confusion with the mark in respondent's registration.  This is sufficient to show that petitioner has a real interest in this proceeding and, therefore, has standing. *Lipton,* 213 USPQ at 189 ("Thus, to have standing in this case, it would be sufficient that [plaintiff] prove that it filed an

application and that a rejection was made because of [defendant's] registration"); *Fiat Group Automobiles S.p.A. v. ISM Inc.*, 94 USPQ2d 1111, 1112 (TTAB 2010), *citing Life Zone Inc. v. Middleman Group Inc.,* 87 USPQ2d 1953, 1959 (TTAB 2008), ("The filing of opposer's application and the Office's action taken in regard to that application provides opposer with a basis for pleading its standing. . .").

B.  **Whether respondent abandoned its rights in the SHUT IT DOWN trademark?**

Under the subtitle "Abandonment," petitioner alleges on information and belief that respondent is no longer using and has discontinued use of the SHUT IT DOWN mark, has no intention to resume use of the mark, and that petitioner will be damaged by the continued registration of respondent's mark.  (Petition for Cancellation, ¶¶ 4-7).

Abandonment is one of the statutory grounds for cancellation of a trademark registration, § 14(3) of the Trademark Act, 15 U.S.C. § 1064(3).  A mark is deemed to be "abandoned," if the following occurs:

> When its use has been discontinued with intent not to resume such use.  Intent not to resume use may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127.

There are two elements to an abandonment claim that a plaintiff must prove:  nonuse of the mark and intent not to resume use.  Because registrations are presumed valid under 15 U.S.C. § 1057, the party seeking cancellation based on abandonment bears the burden of proving a *prima facie* case. *Quality Candy Shoppes/Buddy Squirrel of Wisconsin Inc.* v. *Grande Foods*, 90 USPQ2d 1389, 1393 (TTAB 2007) *citing On-Line Careline Inc.* v. *America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1476 (Fed. Cir. 2000).  If plaintiff can show three consecutive years of nonuse, it has established a *prima facie* showing of abandonment, creating a rebuttable presumption that the registrant has abandoned the mark without intent to resume use.  The burden of production, i.e., going forward, then shifts to the registrant to produce evidence that it has either used the mark, or intended to resume use.  The burden of persuasion remains with the plaintiff to prove abandonment by a preponderance of the evidence.  See *On-line Careline,* 56 USPQ2d at 1476 and *Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307, 1310 (Fed. Cir. 1989).

With respect to the vast majority of the goods recited in Registration No. 3372975, i.e., the "goods admitted not in use," respondent has admitted that he has not used the

mark on these 109 items and has no intention to do so.[17]
This is sufficient to prove abandonment as to those goods.
*See Imperial Tobacco Ltd.* v. *Philip Morris Inc.*, 899 F.2d
1575, 14 USPQ2d 1390, 1395 (Fed. Cir. 1990)(abandonment
found where mark had never been used); and *The Procter &
Gamble Co*. v. *Sentry Chemical Co*., 22 USPQ2d 1589, 1592,
(TTAB 1992)(abandonment may be established by proving that a
registrant is not using or has *never* used its mark on
certain goods)(emphasis added).

The statutory benefits of respondent's registration
under 15 U.S.C. § 1057 are not enough to bridge the critical
period of nonuse.  The presumption of validity of a
registration under 15 U.S.C. § 1057(b) entitles respondent
to rely on the filing date of his application to claim use
of his mark, and sets the critical period for petitioner to
make a *prima facie* showing of abandonment as the three-year
period commencing March 15, 2006.[18]  The more than three
year lapse of time, from respondent's March 15, 2006
application filing date to the August 4, 2009 date of his
admission that he has never used the mark for the bulk of

---

[17] By omitting such goods in his responses to Interrogatory No. 2
(goods ever offered for sale under the mark) and No. 10 (goods on
which respondent intends to use or has used the mark), respondent
has effectively admitted nonuse of the mark on all products other
than the seven products he identified in his responses, only four
of which are recited in his registration.

[18] Respondent based his application for registration on 15 U.S.C.
§ 1051(a), claiming a date of first use of January 1, 2006, and a
date of first use in commerce of February 3, 2006 for each item.

the identified goods[19] is sufficient for a *prima facie*
showing of abandonment as to the goods not in use. *Cf.*
*P.A.B. Produits et Appareils de Beaute* v. *Satinine Societa*
*In Nome Collettivo di S.A. e.M. Usellini*, 570 F.2d 328, 196
USPQ 801, 804 (CCPA 1978)(no inference of abandonment when
registrant's last date of use is less than two years prior
to the date when registrant answered petitioner's
interrogatory).[20]

This *prima facie* showing of abandonment shifts the
burden to respondent, who must show he used the mark or had
an intent to resume use of the mark. *Imperial Tobacco,* 14
USPQ2d at 1393 (presumption eliminates plaintiff's burden to
establish the intent element of abandonment as an initial
part of its case). Not only has respondent failed to
provide any evidence that excuses his nonuse of the mark or
shows his intention to resume use of the mark on such goods,
respondent has admitted that he has no intention to use his
mark on these 109 items. No proof could be more persuasive
than respondent's admission of nonuse. *See Lipton*, 213 USPQ
at 191. In view of respondent's failure to rebut the
presumption of abandonment with respect to the "goods

---

[19] Or more accurately, that he has used the mark for only four of
the items identified in the application/registration.

[20] Effective January 1, 1996, 15 U.S.C. § 1127 was amended to
provide that "three consecutive years" rather than "two
consecutive years" of nonuse constitutes *prima facie* evidence of
abandonment.

admitted not in use," petitioner has established abandonment by a preponderance of the evidence with respect to the 109 "goods admitted not in use."

We now turn to the four items respondent has identified as those items on which he has used or is using the mark, i.e., "goods allegedly in use." The evidence submitted by petitioner shows that no one has purchased goods from respondent in the five years preceding respondent's service of responses to petitioner's discovery requests;[21] respondent has no sales receipts or other sales documents, no invoices and/or bills of service for goods showing use of the mark for the more than three years between the filing date of his application and the service of responses to petitioner's discovery requests; no promotional materials; and no documents relating to his first use of the SHUT IT DOWN mark.

The foregoing establishes petitioner's *prima facie* case of abandonment based on nonuse of the mark for the four "goods allegedly in use" for the more than three year period between respondent's filing date and date of his responses to petitioner's discovery requests. Accordingly, the burden of going forward and rebutting petitioner's *prima facie*

---

[21] Petitioner's discovery requests inquired about use during a five year period. The three year period of nonuse that is critical to our finding of abandonment falls within this longer five year period covered by the discovery requests.

19

showing shifted to respondent.  Based on the record before us, respondent did not meet his burden.

Respondent introduced no testimony or evidence during his testimony period.  However, on September 14, 2010, prior to the opening of petitioner's testimony period, respondent filed an original cash register receipt and his response to petitioner's third request for the production of documents with the Board.  The filing of these documents with the Board was inappropriate.  *See* 37 C.F.R. § 2.120(j)(8).  Because the cash register receipt was not offered into evidence in compliance with the Trademark Rules of Practice, it cannot be considered as evidence supporting respondent's case.  *See* Trademark Rule 2.123(l), 37 CFR § 2.123(l) (evidence not obtained and filed in compliance with these sections will not be considered).  Even if a copy of this particular receipt had been properly introduced by either party, the receipt would have no probative value.[22] Similarly, the sample hangtag produced by respondent in response to petitioner's second document request was not properly introduced by either party and, even had it been properly introduced, would have limited probative value.  In

---

[22] The receipt consists of a string of transactions dated 07-23-2010, two years after the cancellation petition was filed.  It does not bear the name of any person or establishment, or identify the subject matter of the transactions.  Accordingly, it would not be probative evidence even if it had been properly offered during respondent's testimony period.

20

*inter partes* proceedings, a hangtag by itself, without any testimony describing how it was used, merely demonstrates that the hangtag existed at some point in time; it does not prove that the mark was actually placed on goods or that goods bearing the hangtag were offered for sale in commerce. See, *Top Tobacco, L.P.* v. *North Atlantic Operating Co., Inc.,* 101 USPQ2d 1163 (TTAB 2011)(product packaging found to be self-authenticating under Fed. R. Evid. 902(7), however packaging has limited probative value without further evidence of its use in commerce).

Respondent did not provide a shred of evidence to corroborate his alleged use of the mark in commerce on the four "goods allegedly in use" items.  His uncorroborated interrogatory responses that he used the mark or that he intends to use it on these items are insufficient to rebut the presumption of abandonment resulting from the lack of any advertising, sales, or customers for the five years prior to respondent's responses to petitioner's discovery requests, for *any* items listed in respondent's registration. A party's response to an interrogatory is not without evidentiary value, but generally is viewed as "self-serving."  *General Electric Co. v. Graham Magnetics Inc.*, 197 USPQ 690, 692 n.5 (TTAB 1977) *citing Grace & Co. v. City of Los Angeles*, 278 F.2d 771, 776 (9th Cir. 1960), and *Beecham Inc. v. Helene Curtis Industries, Inc.*, 189 USPQ 647

(TTAB 1976). The trier of fact has discretion to decide what weight to give to an interrogatory response. *Fidelity & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 777 (3d Cir. 1981).

The only invoices that were provided by respondent, but not properly introduced into the record, were dated in April, September, November, and December 2009, long after the petition for cancellation was filed in July 2008. Notably, none of these documents bear a date that falls within the critical three-year period of nonuse measured from respondent's filing date, i.e., from March 2006 to March 2009. More importantly, the SHUT IT DOWN mark is nowhere to be found on the invoices; and these invoices do not represent sales by respondent as they are invoices issued by third parties "to" respondent.[23]

While it is petitioner's burden to prove nonuse of the mark, respondent's failure to produce any evidence corroborating his responses to petitioner's discovery requests seeking such evidence leaves us little choice but to conclude that respondent has not used his mark in commerce on the "goods allegedly in use" for the more than three-year period from his March 2006 application filing

---

[23] As set forth in note 8 *supra*, and pursuant to TBMP § 704.11, the Board can not consider these documents in support of either party.

date through his August 2009 response date[24] and had no intention to do so. Therefore, we find that respondent has also abandoned his rights to the SHUT IT DOWN mark with respect to the four "goods allegedly in use."

In view of the foregoing, we find that respondent failed to rebut the *prima facie* case of abandonment established by petitioner. Respondent has not made use of the mark on the items identified in his registration for a period of time lasting in excess of three years, has not shown an intent to resume use of the mark and has therefore abandoned use of the mark for all of the goods in Registration No. 3372975. Accordingly, pursuant to 15 U.S.C. §§ 1064 and 1127, Registration No. 3372975 shall be cancelled in its entirety on the ground of abandonment.

C.  **Whether respondent fraudulently obtained his registration due to nonuse of mark at time of filing?**

For completeness, we turn to the fraud claim based on petitioner's allegation that respondent had not made use of the mark either at the time of filing his application or when he submitted a substitute specimen attesting to use of the mark.

---

[24] August 4, 2009, is the date that respondent submitted responses to petitioner's first set of discovery requests. Respondent subsequently provided undated responses to petitioner's second and third sets of discovery requests.

The relevant standard for proving fraud set forth in *In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938 (Fed.Cir. 2009), requires a showing of the following four elements:

(1) applicant/registrant made a false representation to the USPTO;

(2) the false representation is material to the registrability of a mark;

(3) applicant/registrant had knowledge of the falsity of the representation; and

(4) applicant/registrant made the representation with intent to deceive the USPTO.

*Id.,* 91 USPQ2d at 1941.

Petitioner's fraud claim alleges the following upon information and belief:[25] (1) respondent is not now using and never has used the SHUT IT DOWN mark on or in connection with each item recited in the underlying application; (2) respondent falsely alleged in his declarations in support of his application and substitute specimen that the mark was in use on all of the recited goods; (3) respondent knew at the time he submitted his declarations that the recitation of use of the mark for the goods in his application was false;

---

[25] Subsequent to issuance of the Federal Circuit's decision in *In re Bose*, the Board has found pleadings of fraud based on information and belief to be insufficient when the pleading does not otherwise set forth a clear basis for the claim of fraud. In this case, the petition for cancellation was filed prior to the *Bose* decision and its sufficiency was not challenged by respondent.

(4) the USPTO issued the subject registration pursuant to the declarations that these statements were true, which was material to the grant of the registration; (5) that respondent procured the registration by false means and/or by knowingly making false and/or fraudulent declarations or representations to the USPTO including false allegations in a declaration that respondent used the mark in connection with the recited goods when respondent did not use the mark on all recited goods at the time of the application. Because we find that respondent's allegation of use of his mark in commerce for the identified goods, at the time of filing of his application was false, we hold that the application was void *ab initio*, and we need not decide the fraud claim.

Respondent admitted to nonuse of the mark on 109 of the 113 items listed in his application both at the time of filing of the application and at the time of filing of a substitute specimen of use. See, *supra*, finding of fact No. 19. Respondent clearly made a false representation that the mark was in use on each of those 109 items on which he now admits the mark was never used.

Additionally, as addressed above, there is no evidence to corroborate respondent's interrogatory responses that he used the mark in commerce in connection with the four remaining "goods allegedly in use," namely, T-shirts, caps,

jogging suits and jerseys.  In fact, nonuse is established by the other interrogatory responses coupled with respondent's acknowledgment of the lack of documents such as sales records, bank records, tax returns, sales receipts, invoices, bills of service, advertising and promotional materials.  Therefore, respondent's representations to the USPTO that the mark was in use on these four products were also false.

Accordingly, petitioner has made a *prima facie* case that registrant did not use his mark at the time he filed the underlying application based on use in commerce under § 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).  Respondent has not taken any action to contradict the accuracy or probative value of petitioner's showing.

The law is clear that an application can be held void if the plaintiff pleads and proves either fraud or nonuse of a mark for all identified goods or services prior to the application filing date.  *Grand Canyon West Ranch LLC* v. *Hualapai Tribe*, 78 USPQ2d 1696, 1697 (TTAB 2006).  *Cf. Wet Seal Inc. v. FD Management Inc.*, 82 USPQ2d 1629 (TTAB 2007) ("an application will not be deemed void for lack of a bona fide intention to use absent proof of fraud, or proof of a lack of bona fide intention to use the mark on all the goods identified in the application").

Here, we acknowledge that the petition for cancellation did not include a separate claim alleging that respondent's nonuse of the mark at the time of filing rendered the application void *ab initio*. Nonetheless, paragraphs 11 and 13 of the petition for cancellation clearly put respondent on notice that petitioner had alleged nonuse by respondent, in particular, "on all recited goods at the time of the application" (¶ 13). Such separate pleading of a nonuse claim, while preferable, is not, however, critical, and the Board has found applications to be void *ab initio* even when nonuse was not pleaded as a separate claim or issue. *See CPC International Inc.* v. *Skippy Inc.*, 3 USPQ2d 1456, 1460 (TTAB 1987) (though panel found evidence of fraudulent intent lacking, it nonetheless concluded "there is no doubt whatsoever that the marks were not in use on the indicated services as of the filing dates of the applications and . . . the specimens of record do not demonstrate any such use on or prior to the filing dates. Accordingly, both applications are void *ab initio*.") and *Laboratories du Dr. N.G. Payot Establissement* v. *Southwestern Classics Collection Ltd.*, 3 USPQ2d 1600, 1603-04 (TTAB 1987) (unpleaded issue of nonuse of the mark sought to be registered was tried by implied consent of the parties where [defendant] had fair notice of the issue and was neither unfairly surprised nor prejudiced by consideration of the

27

issue which was the subject of discovery requests and responses, and testimony deposition of defendant's president).

In this case, there is no doubt that the issue of nonuse by respondent at the time of filing was clearly set out in the petition for cancellation and tried by the parties.[26] Based on our finding that the record supports the conclusion that respondent's mark was not in use at the time of filing of his application, we hold the application void *ab initio*. We need not discuss the remaining elements of the fraud claim or render a decision on it, as we have already determined that the registration must be cancelled in its entirety both on the abandonment claim and because of the application's voidness.

**Decision**: The application resulting in Registration No. 3372975 was void *ab initio* based on nonuse of the mark at the time of filing. The petition for cancellation is

---

[26] Petitioner's Interrogatory No. 11 requested that registrant state the date on which the mark was first used and identify documents supporting the date on which the mark was first used for each of the identified goods on which registrant intends to use or has used his mark. See Exhibit 1. Registrant responded "None" to petitioner's Document Request No. 6 requesting registrant to produce all documents which relate to the first use of registrant's mark. See Exhibit 2. Document Request No. 4 in petitioner's Second Request for Documents requested that registrant produce copies of documents used to determine that the mark was first used in commerce on the February 3, 2006 date he identified, for each of the 7 products which registrant stated he used or intended to use his mark, namely, t-shirts, jogging suits, socks, baseball caps, basketball shorts, jerseys and towels. See Exhibit 3.

granted on the grounds of abandonment and on the basis that the application was void *ab initio*.  Registration No. 3372975 shall be cancelled in its entirety.