UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

CME/WF

August 1, 2019

Opposition No. 91220846

*W. Clay Mackey*

*v.*

*Lawson's Finest Liquids, LLC*

**Before Cataldo, Bergsman, and English,**
    **Administrative Trademark Judges.**

**By the Board:**

This case now comes up on: (1) the parties' cross-motions for partial summary judgment on the counterclaim of abandonment, filed May 24, 2018, and June 25, 2018,[1] and (2) Applicant's renewed motion for sanctions, filed January 22, 2019. The motions are fully briefed.

---

[1] Briefing on the parties' cross-motions was suspended pending a determination of Opposer's motion, filed June 27, 2018, for the return or destruction of privileged documents.

In the last sentence of his cross-motion, Opposer asserts that "the Board should grant partial summary judgment in Opposer Mackey's favor by finding that the CHINOOK mark was continuously used with wine[.]" 54 TTABVUE 24. This request will be given no consideration because Applicant has not counterclaimed to cancel Opposer's registration for wine on grounds of abandonment and, even if it had, the Board does not consider embedded motions.

## I.     The Pleadings

Applicant seeks registration of the mark CHINOOKER'D IPA, in standard characters, for "beer."[2] As grounds for opposition, Opposer alleges likelihood of confusion and dilution based on prior use and registration of the mark CHINOOK, in typed form,[3] for "table wine and sparkling wine"  (Registration No. 1353183)[4] and "beer" (Registration No. 1790596 (the "'596 Registration")).[5]

In its amended answer and counterclaims, filed December 23, 2015, Applicant denies the salient allegations in the notice of opposition, pleads three "defenses" that are amplifications of its denials, and counterclaims to cancel the '596 Registration on grounds of genericness, fraud, and abandonment based on nonuse. In his answer to Applicant's amended counterclaims, filed January 22, 2016, Opposer denies the salient allegations in the counterclaims.

## II.    Applicant's Motion for Sanctions

Applicant argues for sanctions against Opposer on the ground that Opposer has failed to produce discovery "relating to the sale of beer under the mark CHINOOK."[6] More specifically, Applicant argues that its first two sets of discovery requests focused on Opposer's use (or nonuse) of the mark CHINOOK for beer; that in an April 3, 2017

---

[2] Filed June 4, 2014 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on Applicant's claim of first use and first use in commerce as of September 2008; "IPA" disclaimed.

[3] A typed mark is the legal equivalent of a standard character mark. TMEP § 807.03(i) (Oct. 2018).

[4] Registered August 6, 1985; second renewal.

[5] Registered August 31, 1993; second renewal.

[6] 67 TTABVUE 6.

order, the Board ordered Opposer to serve amended responses to Applicant's first set of discovery requests; that Opposer "waited more than a year after discovery responses were compelled by the Board (as to Applicant's first set of discovery requests) or were due (as to Applicant's second set of discovery requests) to provide responsive documents and information" and that this was after Applicant filed its motion for summary judgment; and that in arguing the parties' cross-motions for summary judgment on the counterclaim of abandonment, Opposer relies on documents and information related to his use of the mark CHINOOK for beer that he should have, but did not, produce.[7] Applicant requests that the Board sanction Opposer by: (1) entering judgment against Opposer on his claims in the opposition; (2) sustaining Applicant's abandonment counterclaim against the '596 Registration; or (3) striking Opposer's evidence related to Opposer's use and efforts to use the mark CHINOOK for beer, namely, paragraphs 8-37 of Opposer's declaration (the "Mackey Declaration") and Bates numbered documents MACK000556-000557, MACK000559-563, MACK000599-604, MACK000624-627, MACK000639-655, MACK000657-662, MACK000684-687, and MACK000692-701 (collectively the "Objected-to Evidence").[8]

The law favors determining cases on the merits, when possible. *Paolo's Assocs. Ltd. P'ship v. Bodo,* 21 USPQ2d 1899, 1902 (Comm'r 1990). For the reasons explained in Section III below, even when we consider the Objected-to Evidence, we reach the same conclusion on the parties' cross-motions for summary judgment on the

---

[7] *Id.* at 7 and 15.

[8] *Id.* at 5, 7 and 15.

counterclaim of abandonment: Applicant is entitled to judgment. Accordingly, Applicant's motion is **moot** to the extent Applicant requests that the Board exclude the Objected-to Evidence and enter judgment for Applicant on its abandonment counterclaim.

Applicant's motion is **denied without prejudice** to the extent Applicant seeks judgment on Opposer's claims in the opposition. Judgment as a sanction is a harsh remedy that generally is reserved for when a party repeatedly fails to comply with Board orders and no lesser sanction would be effective. *Benedict v. Superbakery Inc.*, 665 F.3d 1263, 101 USPQ2d 1089, 1093 (Fed. Cir. 2011) *aff'g* 96 USPQ2d 1134 (TTAB 2010). Such circumstances are not present here.

## III. The Parties' Cross-Motions for Partial Summary Judgment

The parties' have cross-moved for summary judgment on Applicant's counterclaim of abandonment based on nonuse. Additionally, Applicant seeks summary judgment on abandonment through naked licensing. Applicant has not pleaded abandonment based on naked licensing and Opposer has objected to Applicant seeking summary judgment on this unpleaded counterclaim. Accordingly, Applicant's motion will be given no consideration to the extent it is based on abandonment through naked licensing. *See* Fed. R. Civ. P. 56(a); *Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1772 (TTAB 1994) ("[A] party may not obtain summary judgment on an issue which has not been pleaded" if its adversary has objected on this basis), *aff'd mem.*, 108 F.3d 1392 (Fed. Cir. 1997); TBMP § 528.07(a) (2019).

### A. Summary Judgment Standard

Summary judgment is appropriate only where there are no genuine disputes as to any material facts, thus allowing the case to be resolved as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine dispute of material fact, and that he is entitled to a judgment under applicable law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Sweats Fashions, Inc. v. Pannill Knitting*, 833 F.2d 1560, 4 USPQ2d 1793, 1796 (Fed. Cir. 1987). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. *See Opryland USA Inc. v. Great Am. Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). Evidence on summary judgment must be viewed in a light most favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA*, 23 USPQ2d at 1472. The Board may not resolve genuine disputes as to material facts; it may only ascertain whether genuine disputes as to material facts exist. *See Llyod's Food Prods.*, 25 USPQ2d at 2029; *Olde Tyme Foods*, 22 USPQ2d at 1544.

### B. Standing

Standing is a threshold issue that a plaintiff must prove in every inter partes case. *See Lipton Indus., Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). There is no genuine dispute that Applicant's standing is inherent in its

position as defendant in the opposition proceeding. *See, e.g., Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1428 (TTAB 2014) ("Applicant has standing based upon opposers' assertion of their marks and registrations against applicant in their notice of opposition."); TBMP § 313.03.

### C. Abandonment Through Nonuse

A mark is abandoned "[w]hen its use has been discontinued with the intent not to resume such use." 15 U.S.C. § 1127. For purposes of abandonment, "use" of a mark means "use in commerce," which is defined as:

> the *bona fide* use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark…. A mark shall be deemed in use in commerce – (1) on goods when – (a) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (b) the goods are sold or transported in commerce[.] "

15 U.S.C. § 1127.

Evidence of nonuse of a mark in commerce for three consecutive years constitutes a *prima facie* showing of abandonment and shifts the burden to the party contesting the abandonment to show either evidence sufficient to disprove the underlying facts showing three years nonuse, or evidence of an intent to resume during the period of nonuse. *Rivard v. Linville,* 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998); *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 14 USPQ2d 1390, 1393 (Fed. Cir. 1990) ("In effect, the presumption eliminates the challenger's burden to establish the intent element of abandonment as an initial part of its case."); *Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 13 USPQ2d 1307, 1311-12 (Fed. Cir. 1989); *Stromgren*

*Supports Inc. v. Bike Athletic Co.*, 43 USPQ2d 1100, 1111 (TTAB 1997). Conclusory testimony is not sufficient to demonstrate an intent to resume use of a mark. *Imperial Tobacco*, 14 USPQ2d at 1394. Rather, a party defending against a claim of abandonment must proffer evidence of specific activities demonstrating an intent to resume use. *Id.* at 1394-95. Once a registered mark is abandoned, that abandonment cannot be "*reversed* by subsequent re-adoption of a mark." *Parfums Nautee Ltd. v. Am. Int'l Indus.,* 22 USPQ2d 1306, 1310 (TTAB 1992) (quoting *First Nat'l Bank of Omaha v. Autoteller Sys. Servs. Corp.,* 9 USPQ2d 1740, 1743 (TTAB 1988) (emphasis in original).

On January 31, 1992, Opposer granted a license to Montana Beverages (d/b/a Kessler Brewing Co.) to produce, bottle, label, ship and sell CHINOOK beer to "customers and potential customers designated by [Opposer]."[9] Under the agreement, Montana Beverages was to "receive all sums in payment for the beer from purchasers and credit the same to the account of [Opposer]" less its expenses for producing, bottling, packaging and warehousing the products.[10] In June 1992, Montana Beverages produced ten cases of beer under the CHINOOK mark.[11] In July 1992, the Washington State Liquor Control Board issued a purchase order for ten cases of CHINOOK beer and the beer was received by State Liquor Agency 554 in Prosser, Washington.[12] There is no testimony or other evidence (e.g. invoices, bills of lading,

---

[9] 54 TTABVUE 28, Mackey Declaration, ¶ 7, and 54 TTABVUE 35-37.

[10] *Id.* at ¶ 8.

[11] *Id.* at ¶ 11.

[12] *Id.* at 186; 68 TTABVUE 16, Second Mackey Declaration, ¶ 13.

records showing payments to Opposer under the license agreement) showing subsequent sales or shipments of CHINOOK beer until August 1, 2000 when Redhook Brewing Company, pursuant to a license agreement with Opposer, sold CHINOOK ale to Maletis Beverages.[13]

When a registration issues under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), as did the '596 Registration, the period of nonuse includes any pre-registration nonuse subsequent to the declaration of use, which for the '596 Registration was the September 3, 1992 filing date of the underlying use-based application. *ShutEmDown Sports, Inc. v. Lacy,* 103 USPQ2d 1036, 1042 (TTAB 2012) (measuring three-year period of nonuse from filing date of underlying use-based application). Applicant has established a *prima facie* case that Opposer discontinued use of the mark CHINOOK for beer for at least three consecutive years from the September 3, 1992 filing date of the use-based application underlying the '596 Registration (the Nonuse Period).

Accordingly, the burden shifts to Opposer to demonstrate that there is a genuine dispute of material fact as to whether he used, or had an intent to resume use of, the

---

The first Mackey Declaration suggested that Opposer purchased ten cases of CHINOOK beer from the Washington State Liquor Control Board for purposes of sampling and approving the beer product produced by Montana Beverages. 54 TTABVUE 29, Mackey Declaration, ¶¶ 11 and 13. Opposer attached a second declaration to his reply brief in which he avers that "[t]o clarify my previous declaration regarding the ten cases of beer Montana Beverages produced under the CHINOOK mark in 1992, these cases were not delivered to me. The Washington State Liquor Control Board Purchasing Division sent a Purchase Order to Montana Beverages for ten cases of CHINOOK beer." The "special order" invoice supports this averment because it lists State Liquor Agency 554 as the recipient of the ten cases of CHINOOK beer.

[13] 54 TTABVUE at 30, Mackey Declaration, ¶ 21; 54 TTABVUE 39-44 and 251.

CHINOOK mark for beer during the Nonuse Period. Opposer has not met this burden. There is no evidence that Opposer (or his licensee) sold or shipped CHINOOK beer during the Nonuse Period. As to an intent to resume use, Opposer's averment that "[a]t no time was there any intent to abandon the CHINOOK mark" is "little more than a denial in a pleading, which is patently insufficient to preclude summary judgment…." *Imperial Tobacco,* 14 USPQ2d at 1394. The only other evidence regarding whether Opposer had an intent to resume use of the mark during the Nonuse Period is the license agreement with Montana Beverages.[14] The mere existence of the license agreement without any testimony or evidence demonstrating that steps were being taken to sell or ship beer pursuant to the license agreement is not enough to raise a genuine dispute of material fact to rebut the presumption of abandonment. *Imperial Tobacco*, 14 USPQ2d at 1394-95 (requiring specific activities demonstrating an intent to resume use). Accordingly, there is no genuine dispute of material fact that Opposer abandoned the CHINOOK mark for beer.[15]

---

[14] Opposer terminated the license agreement with Montana Beverages on December 20, 1998. 54 TTABVUE 226.

Opposer avers that he "had ongoing discussions with other breweries about producing beer under the CHINOOK mark, but without any fruitful outcomes." *Id.* at 29, Mackey Declaration, ¶ 16. The only time frame Opposer provides for these discussions is 1998 and 1999 when he: (1) "attempted to negotiate a potential license agreement with Big Rock Brewery to produce beer under the CHINOOK mark in Canada," but the "negotiations were unsuccessful"; and (2) "began negotiations with Redhook Ale Brewery." *Id.* at ¶¶ 17 and 18. The discussions with Big Rock Brewery are not pertinent because they concerned possible use of the mark in Canada, not the United States. Further, the negotiations with both Big Rock Brewery and Redhook occurred after the Nonuse Period and so do not show an intent to resume use during the Nonuse Period.

[15] Opposer asserts that he used the CHINOOK mark for beer from 1999 to 2006 and again from 2013 to the present. 54 TTABVUE 21. Because abandonment of a registered mark cannot be reversed by subsequent re-adoption of a mark, any re-adoption of the CHINOOK mark for beer by Opposer is necessarily a new use that is not pertinent to Applicant's

Applicant's motion for partial summary judgment on its counterclaim of abandonment is therefore **granted**, Opposer's cross-motion for partial summary judgment on the counterclaim of abandonment is **denied**, Applicant's abandonment counterclaim is sustained, and the '596 Registration will be cancelled in due course.[16] In consequence thereof, Applicant's counterclaims for genericness and fraud are **dismissed without prejudice**.

## IV.    Proceedings Resumed

Proceedings are resumed with respect to Opposer's likelihood of confusion and dilution claims.

The Board will not consider any further motions for summary judgment. The parties are required to seek the Board's verbal approval prior to filing any other types of unconsented pre-trial motions.[17]

Discovery, disclosure, trial, and briefing deadlines are reset as follows:

| | |
|---|---|
| Discovery Closes for Applicant/Counterclaim Plaintiff[18] | **8/25/2019** |
| Pretrial Disclosures Due for Opposer/Counterclaim Defendant (Party in Position of Plaintiff in Original Claim) | **10/9/2019** |

counterclaim of abandonment but may be pertinent to Opposer's allegations of prior common law rights in the mark CHINOOK for beer.

[16] The evidence submitted in connection with the parties' cross-motions for partial summary judgment is of record only for consideration of those motions. To be considered at final hearing, any such evidence must be properly introduced during the appropriate trial period. *See Levi Strauss & Co. v. R. Josephs Sportswear Inc.,* 28 USPQ2d 1464, 1465 n.2 (TTAB 1993); *Pet Inc. v. Bassetti*, 219 USPQ 911, 913 n.4 (TTAB 1983); *Am. Meat Inst. v. Horace W. Longacre, Inc.*, 211 USPQ 712, 716 n.2 (TTAB 1981).

[17] A party seeking permission to file an unconsented motion should contact both opposing counsel and the assigned Interlocutory Attorney to schedule a mutually agreeable time for the parties and the Board to participate to discuss by telephone the basis for any proposed motion.

[18] Discovery has closed for Opposer/Counterclaim Defendant.

| | |
|---|---|
| 30-Day Trial Period Ends for Opposer/Counterclaim Defendant (Party in Position of Plaintiff in Original Claim) | **11/23/2019** |
| Pretrial Disclosures Due for Applicant/Counterclaim Plaintiff (Party in Position of Defendant in Original Claim) | **12/8/2019** |
| 30-Day Trial Period Ends for Applicant/Counterclaim Plaintiff (Party in Position of Defendant in Original Claim) | **1/22/2020** |
| Pretrial Disclosures Due for Rebuttal for Opposer/Counterclaim Defendant (Party in Position of Plaintiff in Original Claim) | **2/6/2020** |
| 30-Day Trial Period Ends for Rebuttal for Opposer/Counterclaim Defendant (Party in Position of Plaintiff in Original Claim) | **3/22/2020** |
| Pretrial Disclosures Due for Rebuttal for Applicant/Counterclaim Plaintiff (Party in Position of Plaintiff in Counterclaim) | **4/6/2020** |
| 15-Day Trial Period Ends for Rebuttal for Applicant/Counterclaim Plaintiff (Party in Position of Plaintiff in Counterclaim) | **5/6/2020** |
| Opening Brief Due for Opposer/Counterclaim Defendant (Party in Position of Plaintiff in Original Claim) | **7/5/2020** |
| Combined Brief for Applicant as Defendant in Original Claim and Opening Brief as Counterclaim Plaintiff Due | **8/4/2020** |
| Combined Rebuttal Brief for Opposer as Plaintiff in Original Claim and Brief as Counterclaim Defendant in Counterclaim Due | **9/3/2020** |
| Rebuttal Brief for Applicant/Counterclaim Plaintiff Due | **9/18/2020** |
| Request for Oral Hearing (optional) Due | **9/28/2020** |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be

submitted in accordance with Trademark Rules 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).