NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**SASO GOLF, INC.,**
*Plaintiff-Appellant*

**v.**

**NIKE, INC.,**
*Defendant-Appellee*

———————————————

2020-1456

———————————————

Appeal from the United States District Court for the Northern District of Illinois in No. 1:08-cv-01110, Judge Andrea R. Wood.

———————————————

Decided: February 10, 2021

———————————————

MEG E. FASULO, Bartlit Beck Herman Palenchar & Scott LLP, Denver, CO, argued for plaintiff-appellant. Also represented by ERIC H. WEIMERS, Law Office of Eric H. Weimers, Chicago, IL.

MICHAEL JOSEPH HARRIS, Arnold & Porter Kaye Scholer LLP, Chicago, IL, argued for defendant-appellee. Also represented by CHRISTOPHER J. RENK.

———————————————

Before O'MALLEY, REYNA, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Saso Golf, Inc. owns U.S. Patent No. 5,645,495, which claims a particular golf club shape. Saso sued Nike, Inc. for infringing claim 7 of the patent. The U.S. District Court for the Northern District of Illinois held the claim invalid due to indefiniteness. Because we agree with the district court that claim 7 is indefinite, we affirm.

I

Claim 7 of the '495 patent regards the shape of a golf club, specifically a wood. According to the patent, the central innovation is in moving mass from the toe side of a golf club (the half of the clubhead furthest from the player) toward the heel side (the half of the clubhead nearest to the player), which can help a player avoid "hook shots." **[JA 54]** The specification discusses in depth the importance of this mass shift and how it can help a player avoid twisting the clubhead when hitting a golf ball. J.A. 54–55. In the figure below, dashed lines show a prior art golf club, while solid lines show an embodiment of the invention with mass transferred to the heel side.



Annotated Figure 1, Appellant's Br. 30.

Saso's application originally claimed shifting mass to the heel side of a golf club. The examiner rejected the claims as "clearly anticipated" by prior art that disclosed a golf club with mass "concentrated at the heel portion." J.A. 1483. Saso subsequently amended the claims to describe the shape of the golf club, specifically the radius of curvature of each side. In essence, by bulging out a portion of the heel side of the club, the patent moves mass toward the heel side while claiming the invention in terms of shape. The examiner accepted this change. Claim 7 is at issue here:

> 7. A golf club comprising:
>
> > a metallic wood type head including a cylindrical hosel portion formed integrally therewith;
> >
> > said metallic wood type head having a heel side and a toe side, said metallic wood type head having a hitting surface extending from the toe side to said heel side, the hitting surface having substantially the same curvature along a transverse direction as a longitudinal direction,
> >
> > said metallic wood type head further comprising a toe, a heel, and a back side profile shape extending from the toe side to the heel side, said back side profile shape between the toe and a most rearwardly point of said metallic wood type head having a radius of curvature that is larger than the radius of curvature of said back side profile shape between the most rearwardly point of said metallic wood type head and the heel.

'495 Patent at 6:22–37.

To determine whether a golf club infringes claim 7, one must: (1) measure the radius of curvature of the "back side profile shape" of the club head between the club's "toe" and

its most rearwardly point; (2) measure the radius of curvature of the back side profile shape between the club's "heel" and its most rearwardly point; and (3) determine whether the first value is larger than the second value. Making these calculations requires picking a specific point on the "toe" and "heel" from which to measure. But here, the definitions of "toe" and "heel" are at issue. While the parties agree that the terms refer to regions on the toe and heel sides as shown below, the parties dispute whether the size, shape, and locations of these regions and where within them to begin measurements are reasonably certain.



Annotated Figure 1, Appellant's Br. 30.

II

In 2008, Saso sued Nike in the Northern District of Illinois for infringement of claim 7. Nike argued that claim 7 was invalid due to indefiniteness.

The radius of curvature calculation is not described in the specification. Nike argued that an artisan would not be able to determine the locations of the "toe" and the "heel" without further definition in the specification, which meant that an artisan would not know from where to measure the radii of curvature. Nike provided expert testimony in support of this argument. For example, Ralph Maltby stated that "toe" and "heel" were "general terms" and were

"susceptible to different interpretations" at the time, J.A. 2418–19, and that the patent would cover different club-heads depending on the definitions of the terms, J.A. 2425. Dr. Jack Hu testified to the same effect, noting that "toe" and "heel" "have no commonly understood or accepted technical definitions." J.A. 2370. This creates a problem for claim 7, Dr. Hu testified, because "[t]he patent does not explain where to identify these locations on a golf club head. Accordingly, the '495 patent does not advise the person of skill in the art where to measure the golf club head." J.A. 2370–71. John Stites similarly testified that "toe" and "heel" were "general terms." J.A. 2493.

Saso countered with its own expert, Mark Myrhum, who stated in a conclusory fashion that all terms at issue "have a definite and readily ascertainable meaning to one of ordinary skill in the art." J.A. 2802. But Mr. Myrhum did not make any statement defining the horizontal boundaries of the toe and heel. Instead, he opined that the edges of the toe and heel were irrelevant to the present dispute. *See* J.A. 2812 ("[T]he toe and heel each also has a horizontal extent. . . . However, in my opinion, the exact location and/or extent of the heel and toe need not be determined to construe claim 7 of the '495 patent.").

The district court agreed with Saso that the terms "toe" and "heel" refer to regions rather than specific points, but the court rejected Saso's argument that there was no need to pick a specific point on the toe and the heel from which to begin measurements. J.A 34–39. Therefore, the district court narrowed the claim construction dispute to a single legal question (whether claim 7 is indefinite) with a single underlying factual question (whether an artisan would know the boundaries of the toe and heel). J.A. 39 ("[F]rom *where* on the toe and heel does one measure[?]. . . Or is this where the patent becomes too indefinite to construe?") (emphasis in original).

In briefing this question, Nike maintained that the claim was indefinite because an artisan would not know from where to measure. Saso argued that an artisan would know to measure from the *edges* of the toe and heel, but Saso did not provide any explanation of how to determine the locations of those edges. Neither side presented any new expert testimony, and the district court declared claim 7 indefinite. The court held that "[w]ith nothing suggesting where the toe side and heel side end points are located, it is not clear from where on each surface one measures to the most rearwardly point to determine the radii of curvature" and that the claim is therefore indefinite. J.A. 44.

Saso appeals.

## III

We review a determination of indefiniteness de novo. *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 625 (Fed. Cir. 2015). Factual findings underlying the conclusion—such as findings regarding the knowledge of a skilled artisan—are subject to clear error review. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1337 (Fed. Cir. 2015).

Here, the district court made a factual finding that an artisan would not know the precise bounds of the toe and heel of a golf club. Although the district court's final decision did not explicitly state that this was a factual finding, the nature of the finding was clear from the context in which the decision issued. By the time the district court issued its final decision, the dispute had narrowed to a single legal question (whether claim 7 is indefinite) with a single underlying factual question (whether an artisan would know the boundaries of the toe and heel). *See* J.A. 38–39 (rejecting Saso's argument that there was no need to determine a precise point related to the toe and heel from which to measure and requesting additional briefing on the question of whether an artisan would know where to find those points); *see also id.* at 34 ("[T]he Court now turns to

pinpointing the exact location of the 'toe' [and] 'heel'…."). With this context in mind, it is apparent that when the district court said "Saso itself does not indicate where the edges of the toe side and heel side are located" and "it is not clear from where on each surface one measures," the district court made an underlying factual finding that an artisan would not inherently know the edges of the toe and the heel. J.A. 44; *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("Understandings that lie outside the patent documents about the meaning of terms to one of skill in the art or the science or state of the knowledge of one of skill in the art are factual issues."). Even Saso, in its briefing before the district court, contended that the locations of the toe and heel boundaries are factual questions. J.A. 44.

We hold that the district court did not clearly err in this factual finding. Nike presented three experts whose testimony bore on the question of whether an artisan would know from where to begin the radius of curvature measurement.[1] Each testified that artisans did not consider the

---

[1]    Saso argues that Nike's expert testimony is irrelevant because it was submitted at an earlier stage of the dispute when Nike contended that the terms "toe" and "heel" referred to points rather than regions. Reply Br. 14–17. This argument fails for two reasons. First, Saso appears to mischaracterize Nike's stance. Nike's stance at the time was that "toe" and "heel" had *multiple* definitions and were therefore indefinite, an argument they still maintain. *Compare* J.A. 1334 ("[T]hey have varying meanings, and there is no single common understanding as to the exact location of the toe or heel on a club head.") *with* Appellee's Br. 59 ("[There are] multiple definitions for 'toe' and 'heel' that have been used in the art and that yield different results. . . ."). Second, Nike's arguments at various stages of

terms "toe" and "heel" to have a single definition. *See* J.A. 2418–19 (noting the terms were "susceptible to different interpretations"); J.A. 2370 (noting the terms were "susceptible to different definitions"); J.A. 2493 ("I am not aware of a single, standard definition. . . ."). The consistent thrust of their testimony was that an artisan would not be able to choose a point related to the toe and heel from which to measure because "toe" and "heel" are general terms. *See e.g.* J.A. 2370–71 ("[T]he patent does not explain where to identify these locations on a golf club head. Accordingly, the '495 patent does not advise the person of skill in the art where to measure the golf club head."); J.A. 2419 ("[T]he '495 patent does not explain where the measurements of claim 7 are to be taken. This is problematic because the disputed terms listed above are general terms. . . ."). More importantly, Saso never explained how to find the boundaries of the toe and heel. As the district court emphasized, "nothing in the record" explains the boundaries, nor did Saso offer any theory in its briefs. J.A. 44. Saso's lone expert on the issue testified that the exact boundaries of the toe and heel "need not be determined." J.A. 2812. Thus, it was not clear error for the district court to find that an artisan would not reasonably know the boundaries of the toe and heel.

Saso argued at the district court that because this was a factual question, it should have gone to the jury, J.A. 44, but that was not necessary. The meaning of a patent term is a question for the judge, even though some of the questions underlying claim construction may involve credibility determinations. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) (rejecting the argument that

---

the dispute do not alter the actual testimony of the experts. Although district courts often resolve certain disputes along the way, portions of expert testimony may remain relevant, and we analyze the relevant portions here.

"a jury should decide a question of meaning peculiar to a trade or profession simply because the question is a subject of testimony requiring credibility determinations.") Moreover, here, there was no genuine dispute about whether an artisan would know the precise edges of the "toe" and "heel." "[A] conclusory statement on the ultimate issue does not create a genuine issue of fact." *See Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990). And Nike provided the only non-conclusory testimony regarding the location of the toe and heel. Saso's expert never indicated that an artisan would know those boundaries, J.A. 2812, and even Saso admits that their expert "did not opine on the boundary question that is relevant now." Reply Br. 17. The expert's conclusory statement that all terms in the patent "have readily ascertainable meaning[s]" is no more than a recitation of the ultimate conclusion—and indeed, is followed immediately by a sentence opining that the precise locations of the toe and heel are irrelevant. *See* J.A. 2802.

The district court gave the parties a narrow question: "from *where* … does one measure[?]" J.A. 39. And the court clearly instructed the parties to explain "why skilled artisans would adopt those proposed points." *Id.* The district court credited Nike's experts' opinions that an artisan would not know where to measure because Saso provided no explanation of how an artisan could determine the locations. We affirm that finding.

IV

Under the Supreme Court's precedent in *Nautilus*, a patent is indefinite if its claims, "read in light of the specification . . . and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Because an artisan would not already know the bounds of the toe and heel of a

golf club, and because the patent provides no guidance, we hold that claim 7 is indefinite.

## A

As this court recently explained, our precedents indicate that "a claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different outcomes for the claim's scope." *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, No. 2020-1212, 2020 WL 7828776, at *3 (Fed. Cir. Dec. 31, 2020) (citing *Teva Pharms. USA*, 789 F.3d at 1345; *Dow Chem.*, 803 F.3d at 634). Claim 7 of the '495 patent is indefinite under similar logic.

Here, to know whether a golf club infringes the patent, an artisan must make two radius of curvature measurements, one starting from a point on the toe of the club and one starting from a point on the heel of the club. J.A. 33–34. As the district court noted, unless the sides of the golf club are segments of a perfect circle, changes in the starting point of the measurements can change the results of the measurement. *Id.* Almost every golf club, including the preferred embodiment, is more complex than a segment of a perfect circle. J.A. 27–28. So, for an artisan to be reasonably certain whether a golf club falls within the scope of the patent, they must be reasonably certain of the measurement points. *See* J.A. 33 ("[T]he radius of curvature measurements . . . necessarily depend on identifying exact locations of the toe, heel, and most rearwardly point."); *id.* 2425 (opining that "applying a different interpretation" of "toe" and "heel" would make the patent cover different clubheads). Therefore, we agree with the district court that claim 7 is indefinite, given that "it is not clear from where on each surface one measures to the most rearwardly point to determine the radii of curvature. . . ." J.A. 44.

Having accepted the district court's factual finding that artisans do not bring consistent and precise definitions of the toe and heel to their reading of the patent, we now consider whether the patent specification or prosecution history provide any guidance. *See Nautilus*, 572 U.S. at 901. Here, there is no definition for the terms "toe" and "heel" in the patent, nor is there any instruction on how the radius of curvature calculations should be made. The prosecution history provides no guidance either—the claims regarding radius of curvature spawned from an in-person interview with the examiner, and the record does not reflect the specifics of the radius of curvature measurements. *See* J.A. 1623, 1637, 1667–69.

Here, there are multiple methods of calculating the radii of curvature because the calculations depend on pinpointing the locations of the toe and heel. Nothing in the record indicates that an artisan would inherently know the locations of those boundaries and the patent provides no guidance. The scope of the claim depends on these measurements. As such, claim 7 does not "afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus*, 572 U.S. at 909 (quoting *Markman*, 517 U.S. at 373 (internal quotation marks omitted)). We affirm the district court's holding that claim 7 is indefinite.

B

Saso nonetheless argues we must remand because the district court applied an indefiniteness standard that was overturned by the Supreme Court's precedent in *Nautilus*. *See* Appellant's Br. 18–20. But this argument fails for two reasons.

First, Saso explicitly waived this argument at the district court. When the *Nautilus* decision issued between the final briefing on indefiniteness and the district court's final decision in this case, Saso turned down the opportunity to offer briefing on *Nautilus*, arguing that it was no different

than the previous standard. *See* J.A. 3260 (calling the reasonable certainty standard of *Nautilus* "a different label for the same thing"). We will not consider Saso's present argument that the district court erred by applying the previous standard when Saso only assigned importance to the difference in standards after an adverse outcome at the district court.

Second, even if Saso had not waived the arguments regarding *Nautilus*, the district court's decision is consistent with the "reasonable certainty" standard. To be sure, the district court never used the exact words "reasonable certainty," but the court never used the phrase "insolubly ambiguous" either, which would have been a telltale sign that the court applied the wrong standard. *See Nautilus*, 572 U.S. at 901 (replacing the "insolubly ambiguous" standard with one of "reasonable certainty"). Instead, the district court said that "it is not clear from where on each surface one measures" and that the claim is therefore "too indefinite to be valid." J.A. 44. Though the reasoning in that section of the opinion may be brief, a lack of clarity is consistent with a lack of reasonable certainty. Brevity is not legal error.

Regardless, we review the legal issue of indefiniteness de novo, and we hold that the claim is indefinite.

C

Saso also contends that the district court demonstrated a lack of understanding of the patent by using the terms "toe side" and "heel side" when the correct terms would have been "toe" and "heel." Appellant's Br. 29. While the district court was occasionally loose in its distinctions between the terms "toe," "toe region," and "toe side," the court demonstrated a clear grasp of the nature of the dispute. The district court plainly described the issue: "where on the toe and heel sides the end points for measurement of the toe and heel radii of curvature should be measured." J.A. 44. And the district court clearly answered the question:

SASO GOLF, INC. v. NIKE, INC.                    13

"With nothing suggesting where the toe side and heel side end points are located, it is not clear where on each surface one measures. . . ." *Id.*

"We sit to review judgments, not opinions." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983). And here, the opinion language was certainly not so imprecise "as to obfuscate the true basis for the judgement." *Id.* The district court held that the claim was indefinite because it was not clear where an artisan would take the required measurements. We agree and affirm the judgment.

## V

Choosing precise points from which to measure the radii of curvature is essential to knowing whether a golf club infringes the '495 patent. The district court did not clearly err in its findings that the patent provided no guidance on where to locate the points (the toe and heel) and that an artisan would not know specific definitions for those areas. Therefore, we agree with the district court's legal conclusion and hold that claim 7 of the patent is invalid for indefiniteness because it fails to inform an artisan of the scope of the claim with reasonable certainty.

**AFFIRMED**